**GENERAL GUARANTY INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**NEW ORLEANS GENERAL AGENCY, INC., et al., Defendants-Appellants.**

**No. 28486.**

United States Court of Appeals,
Fifth Circuit.

June 15, 1970.

Paul C. Tate, Mamou, La., James J. Morrison, New Orleans, La., for defendants-appellants.

Marian Mayer Berkett, Deutsch, Kerrigan & Stiles, New Orleans, La., for plaintiff-appellee.

Before GEWIN, GODBOLD and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

This is an appeal from the denial of a motion to stay court proceedings pending arbitration in a dispute between an insurance company and one of its general agents. It presents questions springing from the Federal Arbitration Act, 9 U.S.C. § 1 et seq., especially § 3.[1] We reverse.

New Orleans General Agency, Inc. (NOGA) was party to a general insurance agency contract with General Guaranty Insurance Company (GIC). In 1964 NOGA and GIC fell into controversy over whether NOGA was complying with its obligations under the contract. The contract contained an arbitration clause, but neither party demanded arbitration. Approximately ten months later, in 1965, GIC brought this diversity action against NOGA and three individuals alleged to be indemnitors of NOGA. GIC sought an accounting and damages for breach of contract, with judgment against NOGA and the indemnitors.

NOGA filed a motion seeking a summary judgment, dismissal of the complaint for failure to state a claim, and, in the alternative, a stay pending arbitration in accordance with 9 U.S.C. § 3. As grounds NOGA asserted that the complaint and motion and the exhibits attached to them showed on their face that the contract sued on had been abandoned by mutual consent and superseded by another contract with different terms and provisions between GIC, NOGA and Cravens, Dargan and Company (Crav-

ens) under which the latter firm had been substituted in the place and stead of NOGA, so that defendants could have no liability to GIC. The alleged superseding agreement did not contain an arbitration clause.

The alternative request to stay proceedings pending arbitration was set out at length in this manner:

### IV.

In the alternative, and with full reservation of all rights under the foregoing, and without waiving same, and only in the event this Honorable Court should hold or find that there is any part or portion of the first mentioned managing general agency agreement between GIC and NOGA on which this suit may be maintained, then defendant NOGA shows by reference to plaintiff's exhibits that said agreement expressly provides for the arbitration of any disputes thereunder in the following terms:

"If any controversy shall arise between the parties hereto with respect to any transaction arising out of this Agreement or with respect to any of its terms, the same shall be settled by arbitration." etc.

[Immediately following the above-quoted language the arbitration clause states: "The arbitrators shall be either managers in the United States of foreign stock multiple-line insurance companies or presidents or vice presidents of stock multiple-line insurance companies organized under the laws of a state or territory of the United States and active in the business thereof".]

### V.

Defendant NOGA shows that a controversy has arisen; that NOGA

---

1. Section 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or

proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

claims that it is not in default, nor has it ever been, under the contract sued upon, nor has it ever breached same; that alternatively even if there were defaults and/or breaches thereunder, same have been waived by GIC in consideration of said Tripartite Agreement [the alleged superseding agreement] and otherwise; that NOGA is not in default in proceeding with arbitration, no demand therefor having been made; that the trial of this action should be stayed pursuant to 9 U.S.C.A. § 3, until arbitration has been had in accordance with the terms of said agreement.

In January, 1967, after hearing, the court denied the joint motion. Its order provided in part:

The question is then presented—should the parties be directed to arbitrate? We think not. There is a possibility that the contract has been abandoned. If this were the case, it would be because of some subsequent agreement over which it is agreed the arbitrator has no jurisdiction. That issue must be determined by the Court, and to avoid a useless arbitration, should be, we believe, determined now. It appears that the situation facing the Court at this time is one ideally suited for the application of Rule 42(b) of the Federal Rules of Civil Procedure. Accordingly,

IT IS FURTHER ORDERED that a separate trial of the issue of whether the contract was abandoned or merely terminated with the reservation of rights be held. If the contract was abandoned, this matter will be at an end. If it was not abandoned, however, we will then go into the question of whether the guarantors are to be bound by any arbitration award and the question of waiver of the right to arbitration by defendants, and depending upon its conclusions as to those is-

sues, the matter will either be sent to arbitration or determined upon further trial. In view of our handling of this matter, determination of these other issues is pretermitted.

At the same hearing a motion by the indemnitors to be excused from further pleading was denied.[1A]

NOGA then answered, reurging the issues previously raised in the joint motion and asserting also as defenses abandonment of the GIC-NOGA contract, failure of the plaintiff to make Cravens a party, and breach of the contract by GIC. As part of its answer NOGA filed a counterclaim against GIC seeking damages for alleged breach of the superseding agreement. The indemnitors answered, adopting the answer of NOGA and asserting alternatively that if there had been no abandonment of the contract it had been so substantially altered by the successor agreement as to discharge them. Subsequently NOGA sought to file a third party complaint against Cravens. Leave was denied.

In September, 1968, the court held a two-day hearing on the abandonment issue. In July, 1969, it entered findings and conclusions that there had been no abandonment of the GIC–NOGA agreement and that GIC was never a party to the alleged superseding contract. As to arbitration, the court found that NOGA had waived its right to arbitrate and was in default with proceeding with arbitration. Also the court found that it was unwise to invoke its power to stay since the largest part of the controversy had been tried and arbitration at that juncture could result in piecemeal adjudication and delay and unnecessary expense.[2]

The court based its conclusions of waiver and default on the following grounds. NOGA failed to ask for arbitration before suit was filed. It allowed plaintiff to proceed with taking deposi-

---

**1A.** The motion pointed out that should it be determined the contract had been abandoned there would be no basis for indemnity.

**2.** Later a formal judgment was entered denying arbitration.

tions in Florida before indicating any intent to request arbitration. NOGA asked the court to exercise its jurisdiction and dismiss the suit "in preference to arbitration" and asked for a stay to arbitrate only in the alternative. NOGA denied liability on the original contract and filed a counterclaim and attempted to implead third persons (Cravens) not parties to the contract. The individual defendants had not conceded they were subject to the arbitration provisions of the contract or that they would be bound by the arbiter's findings.[3]

We conclude that NOGA was not in default under § 3, nor did it waive its right to insist on arbitration.

■ The Act is not limited by its terms to cases in which the party moving for a stay has made a pre-suit demand for arbitration. To limit the Act to so narrow a range of cases would be inconsistent with the salutary Congressional purposes of furthering the intent of the parties and relieving the courts of burdens.

> \* \* \* [A]ny doubts as to the construction of the Act ought to be resolved in line with its liberal policy of promoting arbitration both to accord with the original intention of the parties and to help ease the current congestion of court calendars.

Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 at 410 (2d Cir. 1959), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). The nonexistence of such a limitation is indicated by the many cases in which there has been searching inquiry into post-suit behavior to determine if there has been default or waiver. Requiring pre-suit demand will place on the party sought to be charged the duty to institute proceedings which may establish his own liability, though if he remains inactive the claims asserted against him may never be formally pressed in either arbitration or court proceedings (and in some instances may be wholly without merit). In a situation such as that of NOGA, a pre-suit demand for arbitration would subject it to the risk of a charge by the other party that by demanding arbitration it has recognized the continued existence of the contract claimed to be abandoned.

■ NOGA did not lose its rights to arbitration by pleading alternatively that the contract had been abandoned and that court proceedings should be stayed pending arbitration. The propriety and desirability of having an initial judicial determination of whether an arbitration contract exists is well recognized. Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2d Cir. 1942); Mogge v. District No. 8, International Ass'n of Machinists, 387 F.2d 880 (7th Cir. 1967). *Cf.* Genesco, Inc., v. Joint Council 13, United Shoe Wkrs. of Amer., 341 F.2d 482 (2d Cir. 1965). See also Fed.R.Civ.P. 8(e) (2) and 6A Corbin, Contracts, § 1443 at 445 (1962).[4] There is no magic in which

---

3. The District Court did not focus on the effect of the request of NOGA for summary judgment. We attach no overriding importance to that aspect of the joint motion for reasons set out below.

4. Compare cases in which arbitration has been waived by long delay in seeking a stay, or by acts inconsistent with the demand for arbitration, e. g., La Nacional Platanera v. North American F. & S.S. Corp., 84 F.2d 881 (5th Cir. 1936) (plaintiff's motion to stay denied, filed four years after suit); Cornell & Co. v. Barber & Ross Co., 123 U.S.App.D.C. 378, 360 F.2d 512 (1966) (before requesting arbitration plaintiff moved for change of venue, filed answer and counterclaim, filed notice of deposition and took deposition of plaintiff's officer, procured production of plaintiff's records, and parties were well into preparation of lawsuit for trial); Radiator Specialty Co. v. Cannon Mills, Inc., 97 F.2d 318 (4th Cir. 1938) (defendant filed answer and counterclaim, case set for trial and continued on defendant's motion, case prepared for trial, defendant moved for § 3 stay when case called for trial); American Locomotive Co. v. Chemical Research Corp., 171 F.2d 115 (6th Cir. 1948), cert. denied, 336 U.S. 909, 69 S.Ct. 515, 93 L.Ed. 1074

alternative was set out first in NOGA's motion.

■ While never put so boldly, GIC's implicit position is this: because the issue of abandonment would determine not only the existence of an arbitration agreement but also effectually determine a defense of NOGA and the indemnitors on the merits, NOGA had to make an election—it could admit the contract was in effect and call for arbitration, or deny the viability of the contract and defend in court. No such election was required.

■ The District Court's order of January, 1967, effectually set the pattern for the future progress of the suit. Initial determination was to be given the issue of abandonment, and the issues of whether the indemnitors were to be bound by an arbitration award and whether arbitration had been waived were reserved. This orderly procedure was prescribed "to avoid a useless arbitration." A defendant can waive arbitration by actions which it takes during determination in the legal forum of the threshold issue of existence of an arbitration contract, if those actions are sufficiently inconsistent with the right to arbitrate.[5] But it loses sight of the purposes and effects of arbitration, and of the desirability of the initial judicial determination, to treat the court proceedings as a sort of judicial tightrope which the party seeking arbitration walks at his peril. The court has to move ahead to dispose of the matters before it in a common sense way, consistent with normal rules and procedures and with preservation of the time and effort of court and parties. NOGA filed an answer. It had to, or suffer default

judgment. It filed a counterclaim, seeking damages for alleged violation by plaintiff of the superseding agreement. Arguably this was a compulsory counterclaim required to be filed under Rule 13(a), Fed.R.Civ.P. But we do not rest our decision on that basis. NOGA was not required to gamble on whether it was compulsory. If the first agreement was superseded by the second, arbitration would drop out of the picture, and the same court, conversant with the issues and facts, would be in position to determine NOGA's unarbitrable claim for damages under the superseding agreement.[6] NOGA was not waiving its right to arbitration but protecting its right to claim unarbitrable damages if the second agreement was effectual. The same considerations apply to the effort to implead Cravens.[7] All of these actions were consistent with orderly participation in the lawsuit. They are things which had NOGA failed to do the court might well have directed it to do in the interest of management of the case. NOGA lost no rights by doing them. Almacenes Fernandez S.A. v. Golodetz, 148 F.2d 625 (2d Cir. 1945); Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 70 F.2d 297 (2d Cir. 1934); Hilti, Inc. v. Oldach, supra. The position of GIC that in all significant documents filed after the January, 1967, order NOGA was required to restate that it was not waiving its right to arbitration is frivolous.

■ For like reasons, the factors of delay and possible double expense, arising from the court's determination of the initial issue, is not a basis for denying the arbitration otherwise available by reason of that determination.

(1949) (defendant's motion filed seven years after its answer and counterclaim, and following extensive proceedings, and after case set for trial).

5. Once the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver. Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968).

6. Compare the cases in which, before raising the demand for arbitration, the de-

fendant has filed a counterclaim, described in Hilti, Inc. v. Oldach, 392 F. 2d 368 (1st Cir. 1968), as defendant's "irrevocably lock[ing] litigious horns by filing a counterclaim."

7. The motion to implead Cravens pointed out that impleader might not be necessary but cautiously suggested that ultimate joinder of Cravens would be necessary for a just adjudication.

Waiver or default cannot spring from the failure of the indemnitors to concede that they were subject to the arbitration clause or that they would be bound by an award. Their status was reserved by the court for decision.

The depositions referred to were taken at the instance of GIC and before NOGA filed its joint motion and during a delay for pleading granted because of illness of defendants' counsel. Whether the depositions related to only the issue of abandonment or other issues as well (and we are not told which), under these circumstances waiver cannot be inferred from this occurrence alone. *Cf.* Hilti, Inc. v. Oldach, *supra.*

NOGA did not waive its right to arbitrate by failure to appeal the January, 1967, order.[8] Pretermitting whether that order was appealable under 28 U.S.C. § 1292(a) (1), GIC's argument that failure to appeal was a waiver is a facet of its implicit theory of election. It misapprehends the usefulness of determining in court if there is an arbitration contract before sending the parties to arbitration.

We comment briefly on what issues are open to the arbitrators. NOGA and the indemnitors have invoked the power of the courts for judicial determination of the abandonment issue. The District Court has decided that issue, and no question is raised on this appeal of the propriety or correctness of that decision.[9] We view that issue as finally determined for all parties and for all purposes. If arbitrable in any event, which we do not decide, it is not now open for redetermination through arbitration.

The District Court did not reach the second reserved issue of liability of the indemnitors, nor do we. It is for the District Court to determine on remand whether this is to be decided by it or by the arbitrators. Also it is for that court to determine if or not an issue is before it of whether the GIC-NOGA contract was within the interstate commerce requirements of the Federal Arbitration Act, 9 U.S.C. §§ 1, 2, and, if so, the disposition of that issue.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

8. Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co., 128 F.2d 411 (7th Cir. 1942) is not to the contrary. There plaintiff sued for unpaid royalties due by contract, defendant answered on the merits, and the case was tried. No one sought arbitration or a stay pending arbitration. Judgment was entered for plaintiff, not appealed from, and paid by the defendant. Thereafter plaintiff demanded arbitration under the contract to assess damages suffered by reason of defendant's refusal to pay royalties until compelled to pay them in the form of the judgment.

9. We would be required to take notice of lack of jurisdiction though not raised. We do not read Prima Paint Corp. v. Flood & Conklin, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) as depriving the District Court of jurisdiction to decide the abandonment issue.