In re KOCH INDUSTRIES, INC., et al.

No. 04–01–00067–CV.

Court of Appeals of Texas,
San Antonio.

April 18, 2001.

David L. Hanna, Larry D. Warren, Nicole D. Lodge, Ruth G. Malinas, Ball & Weed, P.C., San Antonio, Marc O. Knisely, Shannon W. Bangle, W. Timothy George, McGinnis, Lochridge, Kilgore, L.L.P., Austin, Travis A. Pearson, Wichita, KS, Shannon H. Ratliff, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Austin, Gene R. Ward, Hornblower, Manning & Ward, Corpus Christi, for Appellant.

Christopher A. Bandas, Paula A. Wyatt, Wyatt, Wyatt & Cowley, Corpus Christi, Gabriella S. Canales, Alice, G. Don Schauer, Ronald A. Simank, Schauer & Simank, P.C., Corpus Christi, John Charles Lemon, Lemon & Gonzalez-Lemon, Alice, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, SARAH B. DUNCAN, Justice.

## OPINION

PHIL HARDBERGER, Chief Justice.

This is an original proceeding in which Koch Industries, Inc., Koch Pipeline Company, L.P., Koch Petroleum Group, and Koch Gathering Systems, Inc. (collectively "Koch") seek mandamus relief from the trial court's order denying their motion to compel arbitration. AFC Lease Services, Inc. ("AFC") and its owner, Allen Yates ("Yates"), were granted permission to join this proceeding as relators. Koch, AFC and Yates were sued for damages arising from their actions in digging up a pipeline located in an easement and removing, rebuilding, or replacing it. This proceeding presents four issues: (1) whether the Federal Arbitration Act is applicable; (2) whether the claim that the easement Koch relied upon was abandoned is an arbitrable issue; (3) whether Koch waived its right to arbitration; and (4) whether all of the Koch entities, AFC and Yates are entitled to enforce the easement's arbitration provision. We conclude that the trial court erred in denying the motion to compel arbitration. Therefore, we conditionally grant the writ of mandamus.

### BACKGROUND

In 1931, Pattie Jo Hamilton granted Humble Pipe Line Company an easement. The easement provided:

> The said Humble Pipe Line Company hereby agrees to pay any damages which may result from its acts and/or omissions in laying, maintaining, operating, replacing, changing or removing said pipe line; said damages if not mutually agreed upon to be ascertained and determined by three disinterested persons, one of whom shall be appointed by the owners of said lands, their heirs or assigns, one by Humble Pipe Line Company, its successors and assigns, and the third by the two so appointed as aforesaid; and the award of such three persons shall be final and conclusive.

The land owned by Hamilton was subsequently conveyed in undivided interests to Hector Lopez and Rachel Canales. The deeds conveying that interest stated that the conveyance was subject to the Humble easements. Koch became a successor in interest to Humble, and, in 1997, dug up the pipeline located in the easement and removed, rebuilt or replaced it.

On April 14, 1999, Rachel Canales sued Koch for trespass and negligence, claiming that Koch's negligent actions had damaged her land and that the easement had been abandoned, therefore, Koch's actions also constituted a trespass. In May of 1999, Koch filed its original answer and its first requests for disclosures and admissions. On June 18, 1999, Koch filed a notice of removal.

On September 28, 1999, Koch filed a report of meeting of counsel and joint discovery/case management plan. The report stated that Koch was informed that if the case was not settled, Canales would hire an attorney to represent her with regard to all matters, including the joint discovery/case management plan before the hearing scheduled for September 29, 1999; as a result, the joint case management plan could not be completed at the meeting.

At the scheduling conference on September 29, 1999, the attorney retained by Canales asserted the position that the easement had been abandoned, which Koch refuted. In response to the district court judge's inquiry about the validity and applicability of the arbitration provision, Koch's attorney responded: "We're not sure yet, Your Honor." Koch's attorney explained that Koch had not demanded that Canales appoint someone to evaluate her damage because it believed that the misunderstanding could be resolved at the Rule 26 meeting. Koch's attorney further stated: "As far as whether or not there's a binding arbitration requirement, I think that's something that all of us will need to pay particular consideration to." The district court judge concluded the hearing by ordering the parties to file statements concerning whether Hector Lopez needed to be joined as a party. In addition, the district court judge ordered that any intervention by Terry Canales and a new case management plan were to be filed within ten days.

Koch subsequently filed a statement of non-opposition to the joinder of the Lopezes as plaintiffs. Canales filed a motion for leave to file an amended petition to join additional defendants, and Terry Canales filed a motion for leave to intervene. Koch filed an opposition to Canales's motion to join additional defendants. The Lopezes filed a response to the original petition and a motion to remand.

On November 29, 1999, a second scheduling conference was held. When the issue of abandonment was again raised, the district court judge stated: "That's almost getting further than I can go today because I've got to make sure whether or not you're even in the right court, and that's what I'm struggling with today." The district court judge concluded the hearing by ordering four depositions per side limited to the jurisdictional issue.

In December of 1999, Koch filed an answer and counterclaim for declaratory judgment. Koch's pleading stated that the declaratory judgment is necessary because the plaintiffs complain that Koch trespassed on their property, while Koch maintains it has a valid easement. In December of 1999 and January of 2000, Koch served discovery requests and deposition notices on Hector Lopez and the Canaleses.

On December 9, 1999, the Canaleses filed a second lawsuit against other Koch defendants, Koch's independent contractor (AFC), and Yates relating to the same alleged trespass and negligence. The second lawsuit also was removed to federal court by Koch. In February of 2000, the Canaleses filed their motion to remand both lawsuits. In March of 2000, Koch filed its opposition to the motion to remand.

On March 16, 2000, a third scheduling conference was held. At the end of the hearing, the district court judge entered a ruling consolidating both pending lawsuits and remanding them to state court.

After the cause was remanded, the Canaleses filed an amended petition, naming numerous Koch entities, AFC, Yates, and the Lopezes as defendants. On April 20, 2000, Koch sent a letter to the Canaleses'

attorney demanding arbitration. When the Canaleses refused to arbitrate, Koch filed a motion to compel arbitration on May 5, 2000. Sometime thereafter, Hector Lopez filed a cross-claim against the Koch entities, AFC and Yeats. On May 31, 2000, Koch filed a motion to compel arbitration of Lopez's cross-claim. Koch's motions were set for a hearing on November 29, 2000.

The Canaleses responded to the Koch's motion to compel, claiming (1) Koch waived its right to arbitrate; (2) whether the easement had been abandoned was not an arbitrable issue; and (3) Koch did not have standing to invoke the arbitration provision of the easement. The Lopezes also filed a response to the motion to compel, claiming abandonment, waiver, absence of standing and prejudice. The trial court denied Koch's motions to compel arbitration.

## APPLICABILITY OF FEDERAL ARBITRATION ACT

Koch contends that the Federal Arbitration Act applies because evidence was introduced in Koch's pleadings that employees from out of state were sent to Texas to work on the pipeline and materials and services were purchased from out-of-state companies to complete the work. The Canaleses contend that Koch failed to introduce any evidence of interstate commerce.

■ The Federal Arbitration Act applies to a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The term "involving" has been broadly construed as the functional equivalent of "affecting." *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 274–75, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). A transaction involves commerce if the transaction turns out in fact to involve commerce even if the parties did not contemplate an interstate commerce connection. *Id.* at 282. In *Dobson*, the Court

held that the transaction in that case, a contract involving a lifetime "Termite Protection Plan" for a house located in Alabama, involved interstate commerce. *Id.* at 283. The Court concluded, "In addition to the multistate nature of Terminix and Allied Bruce, the termite treating and house-repairing material used by Allied Bruce in its (allegedly inadequate) efforts to carry out the terms of the Plan, came from outside Alabama." Similarly, the Texas Supreme Court has held that a contract involving renovation work on Houston apartments to be done by a Texas business for Georgia owners involved interstate commerce. *In re L & L Kempwood Associates, L.P.*, 9 S.W.3d 125, 127 (Tex.1999).

■ In this case, the transaction involved the removal and replacement of pipeline in Texas. A Texas entity, AFC, was engaged to perform the work, and Koch employees from Wichita, Kansas oversaw the project. A Kansas entity was retained as the inspector for the project. In addition, employees of an Oklahoma entity also provided services. The Canaleses contend that Koch failed to introduce any evidence of interstate commerce; however, the record contains two affidavits from Koch employees, detailing the work performed by out-of-state employees and entities. Although the Canaleses objected to the affidavits, the trial court deferred its ruling on the objection when it was presented, but never issued a ruling prior to issuing its order. Therefore, the objection was waived. *See* TEX.R.APP.P. 33.1(a); *Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex.App.—Houston [14th Dist.] 2000, pet. denied) (noting party asserting objection must obtain written ruling or risk waiver).

Because the easement was a contract evidencing a transaction involving commerce, the Federal Arbitration Act applies.

ARBITRABILITY OF ABANDONMENT CLAIM

The Canaleses and the Lopezes contend that the easement Koch relied upon to enter the property had been abandoned. They further assert that the abandonment claim is not subject to arbitration.

■ A party seeking to compel arbitration must: (1) establish the existence of a valid, enforceable arbitration agreement; and (2) show that the claims asserted fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999); *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex.App.—San Antonio 2000, pet. dism'd by agmt.). The party seeking arbitration has the initial burden to present evidence of an arbitration agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 573; *Henry v. Gonzalez*, 18 S.W.3d at 688–89. Once the existence of an arbitration agreement has been established, a presumption attaches favoring arbitration. *Henry v. Gonzalez*, 18 S.W.3d at 689. The burden then shifts to the opposing party to present evidence that the agreement was procured in an unconscionable manner, induced or procured by fraud or duress, or that the other party has waived its right to compel arbitration under the agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 573; *Henry v. Gonzalez*, 18 S.W.3d at 689.

■ This court has held that the proper standard for reviewing a trial court's determination regarding the existence of an arbitration agreement is abuse of discretion. *See ANCO Ins. Services of Houston, Inc. v. Romero*, 27 S.W.3d 1, 5 (Tex.App.—San Antonio 2000, pet. denied); *Hardin Const. Group, Inc. v. Strictly Painting, Inc.*, 945 S.W.2d 308, 312 (Tex. App.—San Antonio 1997, orig. proceeding [leave denied] ). Under this standard, a trial court's findings must be upheld unless it is determined that the trial court could reasonably have reached only one decision.

*See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). With regard to legal issues, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* at 840.

■ In this case, Koch introduced into evidence the easement containing the arbitration provision. The Canaleses and the Lopezes countered that the arbitration provision was not enforceable because the easement had been abandoned.

Koch primarily relies on two cases to support its position that the abandonment issue is arbitrable. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the United States Supreme Court held that a claim that a contract was fraudulently induced is subject to arbitration. The fraudulent inducement claim only becomes arbitrable "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of an agreement to arbitrate." *Id.* at 403–04, 87 S.Ct. 1801. In *Lawrence v. Comprehensive Business Services Co.*, 833 F.2d 1159, 1161–62 (5th Cir.1987), the Fifth Circuit cited *Prima Paint* in holding that a claim that a contract is illegal would similarly be subject to arbitration. In this case, Koch argues the abandonment claim is also subject to arbitration because the abandonment claim would void the easement as a whole.

In *General Guaranty Ins. Co. v. New Orleans General Agency, Inc.*, the Fifth Circuit directly addressed whether a claim that a contract had been abandoned was arbitrable. 427 F.2d 924, 928–930 (5th Cir.1970). In that case, one of the parties claimed that the first agreement between the parties containing an arbitration clause was abandoned when the parties entered into a second agreement that did not con-

tain an arbitration clause. *See id.* at 926. The district court's order provided:

> The question is then presented—should the parties be directed to arbitrate? We think not. There is a possibility that the contract has been abandoned. If this were the case, it would be because of some subsequent agreement over which it is agreed the arbitrator has no jurisdiction. That issue must be determined by the Court, and to avoid a useless arbitration, should be, we believe, determined now.... IT IS FURTHER ORDERED that a separate trial of the issue of whether the contract was abandoned or merely terminated with reservation of rights be held.

The Fifth Circuit agreed with the district court, noting, "We do not read [*Prima Paint*] as depriving the District Court of jurisdiction to decide the abandonment issue." *Id.* at 930 n. 9.

In *Henry v. Gonzalez*, this court held that "an arbitration agreement contained within a contract survives the termination or repudiation of the contract as a whole." 18 S.W.3d at 690. When a party claims that the underlying contract has been terminated, the trial court's duty is to determine the validity of the arbitration clause in the contract separately from the validity of the contract itself. *Id.*

In this case, the Canaleses and the Lopezes only challenged the validity of the easement, not the validity of the arbitration clause contained in the easement. Unlike *General Guaranty*, the parties did not enter into a subsequent easement that did not contain an arbitration provision. Therefore, the abandonment issue in this case is an issue relating to the validity of the easement or the abandonment of the contract as a whole, not an abandonment of the arbitration clause. Accordingly, the abandonment issue is an arbitrable issue, and the trial court did not have the discretion to deny the motion to compel based on the abandonment theory.

## WAIVER

 The Canaleses and the Lopezes further assert that Koch waived its right to compel arbitration. Courts will not find that a party has waived a right to enforce an arbitration clause by merely taking part in litigation unless the party has substantially invoked the judicial process to the opposing party's detriment. *See Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 577 (5th Cir.1991). The test for determining waiver is two prong: (1) did the party seeking arbitration substantially invoke the judicial process; and (2) did the opposing party prove that it suffered prejudice as a result? *See Prudential Securities, Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995).

 Whether a party has waived its right to compel arbitration is a question of law. *See Walker v. J.C. Bradford & Co.,* 938 F.2d at 577; *In re Bruce Terminix Co.,* 988 S.W.2d 702, 704 (Tex.1998). A strong presumption against waiver exists. *See Walker v. J.C. Bradford & Co.,* 938 F.2d at 577; *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d at 898. Waiver of an arbitration right must be intentional. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex.1996) (orig.proceeding). Implying waiver from a party's actions is appropriate only if the facts demonstrate that the party seeking to enforce arbitration intended to waive its arbitration right. *Id.* The party seeking to prove waiver bears a "heavy burden of proof," and any doubts regarding waiver are resolved in favor of arbitration. *See Walker v. J.C. Bradford & Co.,* 938 F.2d at 577; *In re Bruce Terminix Co.,* 988 S.W.2d at 705.

 The Canaleses and the Lopezes rely on the actions taken by Koch during the federal proceedings to support their

waiver claim, specifically: (1) Koch's failure to assert its right to compel arbitration during the pendency of the federal proceedings; (2) Koch's failure to assert its right to compel arbitration when it filed its answers; (3) Koch's filing of counterclaims seeking declaratory relief regarding the enforceability of the easement; and (4) Koch's participation in discovery.

Koch filed its notice of removal within two months of the date the lawsuit was filed. *See In re Winter Park Const., Inc.,* 30 S.W.3d 576, 579 (Tex.App.—Texarkana 2000, no pet.) (right to arbitrate not waived based on temporary removal to federal court and participation in discovery). The discovery in which the parties engaged was limited to the issue of federal diversity jurisdiction. *See Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159 (5th Cir.1986) (holding pre-trial discovery related to non-arbitrable subject matter does not constitute waiver). All of the federal court's actions were mainly routine scheduling and discovery orders restricted to resolving the jurisdictional issue. *See Walker v. J.C. Bradford & Co.,* 938 F.2d at 577 (no waiver where district court's actions during thirteen month delay mainly were routine scheduling orders and discovery continuances). Although Koch did not assert its right to compel arbitration during the pendency of the federal court proceedings, Koch did not rule out that possibility. In response to the court's inquiry, Koch stated that it was not certain regarding the validity and applicability of the arbitration provision. Koch's attorney further stated: "As far as whether or not there's a binding arbitration requirement, I think that's something that all of us will need to pay particular consideration to."

■ The most problematic action taken by Koch was the filing of the counterclaims. Both Federal and Texas courts recognize that the filing of a counterclaim is an action that may evidence wavier. *See Williams v. Cigna Financial Advisors, Inc.,* 56 F.3d 656, 661–62 (5th Cir.1995); *Trade Arbed, Inc. v. S.S. Ellispontos,* 482 F.Supp. 991, 998–99 (S.D.Tex.1980); *Sedillo v. Campbell,* 5 S.W.3d 824, 827 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Central Nat'l Ins. Co. v. Lerner,* 856 S.W.2d 492, 494 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding). However, not every counterclaim will amount to a waiver of arbitration. *See Sedillo,* 5 S.W.3d at 828; *see also Williams v. Cigna Financial Advisors, Inc.,* 56 F.3d at 661–62 (no waiver despite counterclaim). In *Sedillo,* the court explained, "For instance, a counterclaim contesting the existence or scope of an arbitration agreement is not waiver." 5 S.W.3d at 828. In this case, Koch's counterclaim requested declaratory relief relating to the ongoing validity of the easement containing the arbitration provision. Therefore, the counterclaim related to the existence of the arbitration agreement. Although the Lopezes contend that the filing of the counterclaim necessarily resulted in waiver as to their claims since the Lopezes did not have a claim filed against Koch at the time the counterclaim was filed, the Lopezes were joint owners of the property in question whose rights were necessarily implicated. In addition, considerable confusion existed as to the Lopezes' status in federal court. Under these circumstances, Koch's counterclaim is not evidence of waiver.

■ The federal court remanded the cause to state court in March of 2000. This was approximately one year after the lawsuit was originally filed. One month later, Koch asserted its right to compel arbitration. Although the decision whether to arbitrate is "one best made at the onset of the case, and not part of the way through," *Walker v. J.C. Bradford & Co.,* 938 F.2d at 577, Koch's actions did not

substantially invoke the judicial process. As a result, Koch did not waive the right to arbitrate.

### KOCH ENTITIES, AFC AND YATES

 With regard to the ability of each of the Koch entities to enforce arbitration, federal courts have held that affiliated companies, including parent and subsidiary corporations, and successor corporations can be forced to arbitrate where the claims against them arise out of the same operative facts and are inherently inseparable from the claims against the affiliate or predecessor corporation. *See, e.g., J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 321 (4th Cir.1988); *Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 681 (5th Cir.1976).

With regard to the claims against AFC and Yates, those claims are based on actions taken pursuant to a contract between AFC and Koch. The Fifth Circuit has adopted the equitable estoppel theory announced by the Eleventh Circuit in dealing with this type of situation. *See Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 527 (5th Cir.2000). "[A]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more signatories to the contract." *Id.* (quoting *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999)). In this case, Koch contracted AFC to perform services, and the claims against AFC and Yates not only relate to the services AFC was contracted to perform but also relate to "acts and/or omissions in ... maintaining ... replacing, changing, or removing [the pipeline]," which are the very claims that the easement requires to be submitted to arbitration.

We hold that the Koch entities, AFC and Yates are entitled to enforce the arbitration provision.

### CONCLUSION

Because the trial court erred in denying Koch's motion to compel arbitration, we conditionally grant the writ of mandamus. The writ will only issue if the trial court fails to withdraw its order denying Koch's motion to compel arbitration.