**TRANSCORE HOLDINGS, INC., Trans-Core Commercial Services, Inc., and Viastar Services Corp. n/k/a Viastar Services, L.P., Appellants,**

v.

**Fred RAYNER, Appellee.**

No. 05–02–01403–CV.

Court of Appeals of Texas, Dallas.

April 29, 2003.

in denying TransCore's motion to compel arbitration. Accordingly, we deny TranCore's petition for writ of mandamus and dismiss its interlocutory appeal as moot.

## Background

The parties to this dispute entered into a Stock Purchase Agreement (SPA) on May 12, 2000. Pursuant to the SPA, TransCore, a Delaware corporation, agreed to purchase the common stock of Viastar Holdings, Inc., a Texas corporation, from Rayner and his fellow shareholder, W. Trent Ates. Rayner received approximately $160,000 in cash and the release from liability for approximately $15,000,000 in debt. The SPA contained an arbitration clause.

Following the SPA, Rayner continued to act as the chief executive officer of Viastar. Rayner's employment with Viastar was terminated on October 8, 2001. TransCore, Viastar, and Rayner were all signatories to the termination agreement.

Following Rayner's employment termination, TransCore contends it discovered facts indicating Rayner had made fraudulent misrepresentations as to Viastar's financial condition at the time of the SPA. Two filings occurred on May 9, 2002. TransCore filed its demand for arbitration in accordance with the arbitration clause in the SPA. Also, Rayner filed an action for declaratory judgment asking the court to declare his rights under the release.

## Federal or State Arbitration Act

 Initially, we must determine whether the Federal Arbitration Act or the Texas Arbitration Act applies to this action. The FAA applies to contracts containing arbitration agreements that evidence a transaction involving interstate commerce. 9 U.S.C.A. § 2 (West 1999). Whether a particular arbitration agreement is controlled by the FAA is determined by

Thomas A. Connop, Locke, Liddell & Sapp, L.L.P., Dallas, for Appellants.

Brent E. Dyer, Looper, Reed & McGraw, P.C., Dallas, for Appellee.

Before Justices WRIGHT, BRIDGES, and O'NEILL.

## OPINION

Opinion by Justice WRIGHT.

TransCore Holdings, Inc., TransCore Commercial Services, Inc., and Viastar Services Corporation n/k/a Viastar Services, L.P. (collectively TransCore) seek relief from the trial court's denial of its motion to compel arbitration and stay proceedings. When a dispute arose between TransCore and Fred Rayner, TransCore moved for arbitration under an arbitration clause in the parties' original contract. As a defense to the motion to compel arbitration, Rayner, the plaintiff in the underlying action, argued that a subsequent agreement between the parties released him of his obligation to arbitrate. After the trial court denied the motion, TransCore filed (1) an interlocutory appeal of the order denying the motion to compel arbitration as permitted by the Texas Arbitration Act and (2) a motion for leave to file a petition for writ of mandamus under the Federal Arbitration Act. In both the interlocutory appeal and the petition for writ of mandamus, TransCore asserts the trial court erred in failing to allow the arbitrator to determine the impact of the later agreement and in denying the motion to compel arbitration. We conclude the Federal Arbitration Act governs this action and that the trial court did not abuse its discretion

whether the contract relates to interstate commerce. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex.1992) (orig. proceeding).

■ In this case, TransCore, a Delaware corporation, purchased all of the stock of Viastar Holdings, Inc., a Texas corporation. Rayner and W. Trent Ates, Viastar's stockholders, were both Texas residents. Also parties to the SPA were four financial institutions—two located in Colorado, one in Iowa, and one in North Dakota. Viastar had outstanding debts with each of these institutions. We conclude that the SPA is a contract involving interstate commerce and, therefore, the FAA governs this action.

### Agreement to Arbitrate

■ We review a trial court's order denying arbitration under an abuse of discretion standard. *Tipps*, 842 S.W.2d at 272–73. A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding). We apply Texas law to determine whether the parties agreed to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

■ The FAA provides that a written provision for arbitration in a contract involving interstate commerce shall be "valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2 (West 1999) (emphasis added). The purpose of the FAA was "to make

arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

■ A party seeking to compel arbitration must show the existence of an arbitration agreement and show that the claims raised fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding). Once a party makes the required showing, the trial court must compel arbitration. *Id.* Without an agreement to arbitrate, arbitration cannot be compelled. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex.1994) (orig. proceeding).

The arbitration clause contained in the SPA provided that any claim or controversy arising out of or relating to the SPA would be settled by arbitration before a single arbitrator in Wilmington, Delaware.[1] Approximately five months after the termination agreement, TransCore moved for arbitration pursuant to this clause. Rayner, relying on the termination agreement, moved to stay arbitration. Specifically, Rayner relied on the following language in the termination agreement to support his assertion that he no longer had an obligation to arbitrate:

> Except as to the promises made in this letter and except as otherwise provided for in this letter, Viastar and TransCore, on the one hand, and you [Rayner] on the other hand, hereby fully, forever, irrevocably and unconditionally release, remise, settle and discharge one another from any and all manner of claims, charges, complaints, debts, liabilities, demands, actions, causes of action, suits,

---

1. The arbitration clause provided, "Other than with respect to equitable claims, any controversy or claim arising out of or relating to this Agreement or the breach thereof (ex-

cept matters to be resolved pursuant to the procedures set forth in Section 2.2(b) above) shall be settled by arbitration before a single arbitrator in Wilmington, Delaware."

rights, covenants, contracts, controversies, agreements, promises, omissions, damages, obligations and expenses of any kind, including attorneys' fees, whether known or unknown, which they had, now have, or hereafter may have against each other arising prior to the date of this letter whether or not pursuant to the terms and conditions set forth in any prior agreements between yourself, Viastar, affiliated companies and its parent, provided however that nothing contained in this letter shall release or discharge you from any obligations with respect to claims [the] Viastar and/or TransCore has, now have, or hereafter may have against you under or pursuant to Sections 7, 8, and 9 of the Employment Agreement date May 12, 2000.

Rayner contends the termination agreement released him of his obligation to arbitrate. TransCore asserts that the arbitrator, and not the trial court, should decide the effect of the release language in the termination agreement. Rayner, on the other hand, insists the trial court must consider the termination agreement in order to determine whether the parties have an agreement to arbitrate.

To support its position that it is for the arbitrator to decide the effect of the termination agreement, TransCore relies on *Prima Paint*. *Prima Paint*, 388 U.S. at 395, 87 S.Ct. 1801. In *Prima Paint*, the parties entered into a consulting agreement along with a contract for the purchase of a business. The consulting agreement contained an arbitration clause. When the purchaser failed to make payments under the consulting agreement and sued the seller for rescission, the seller moved to compel arbitration. The purchaser opposed arbitration on the ground that the seller had fraudulently induced it to sign the consulting agreement. Recognizing that arbitration clauses are separable from the contracts in which they are contained and that the purchaser had asserted that it had been fraudulently induced to enter into the contract as a whole as opposed to the arbitration clause itself, the Supreme Court held that the broad arbitration clause encompassed arbitration of the claims that the contract itself was induced by fraud. *Id.* at 403–04, 87 S.Ct. 1801.

*Prima Paint* is distinguishable on several grounds. First, Rayner is not raising the defense of fraudulent inducement. Rather, he raises as a defense a subsequent agreement negotiated between himself and TransCore. Moreover, he specifically claims the termination agreement released him of his obligation to arbitrate under the SPA. In *Prima Paint*, the trial court had a single agreement before it that contained an arbitration clause.

The other cases relied upon by TransCore are also distinguishable. In *FirstMerit Bank*, the purchasers entered into an installment contract for the purchase of a mobile home. There was a separate arbitration addendum. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 752 (Tex.2001) (orig.proceeding). When problems with the mobile home arose, the purchasers *tried* to revoke their acceptance. The seller refused to rescind the sale. In opposing arbitration, the purchasers argued that their alleged revocation of the installment contract also applied to the arbitration addendum. Because the purchasers failed to prove their defense to arbitration, the supreme court conditionally granted the writ and directed the trial court to compel arbitration. *Id.* at 758. A court should order arbitration when it concludes an arbitration agreement exists and the party opposing arbitration has "failed to prove its defenses." *Id.* at 753–54. By contrast to the parties in *FirstMerit Bank*, TransCore and Rayner negotiated a new agreement

with new consideration that released both parties of all previous obligations. Rayner proved his defense to arbitration. This case does not involve an attempted release; it involves a negotiated, signed release agreement.

Another case relied upon by TransCore involved a dispute over an easement. *In re Koch Industries, Inc.*, 49 S.W.3d 439 (Tex.App.-San Antonio 2001) (orig. proceeding). The easement contained an arbitration clause. When the dispute arose, one party alleged that the easement had been abandoned. *Id.* at 441. The court held the abandonment issue went to the easement as a whole and was a decision for the arbitrator.[2] *Id.* at 445. Again, the significant factual distinction is that *Koch Industries* does not involve a subsequent negotiated agreement between the parties addressing their rights and obligations under the original contract. In our case, we not only have an allegation of release, but also a written agreement between the parties containing release language. Rayner has conclusively proven that an agreement to arbitrate no longer exists.

The other case upon which TransCore relies is distinguishable for similar reasons. *See Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925 (Tex.App.-Houston [1st Dist.] 1996, no pet.). In *Pepe International*, the parties entered into a contract whereby Pub Brewing would sell goods and services to Pepe International. The contract contained an arbitration clause. A dispute arose and Pub Brewing alleged that Pepe International fraudulently induced it into entering into the contract. The trial court denied Pepe International's motion to compel arbitration. The court of appeals reversed, holding that an arbitration clause is valid despite an allegation that the contract containing the clause is unconscionable. *Id.* at 930. Again, the parties in *Pepe International* did not negotiate a subsequent written agreement releasing them of their obligation to arbitrate. This factual distinction is critical.

The facts in our case are more akin to those in *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576 (Tex.App.-Houston [14th Dist.] 1999, no pet.). In *Valero*, the court of appeals addressed whether an arbitration clause had been revoked by a subsequent settlement agreement between the parties. The court addresses this issue under the heading, "Agreement to Arbitrate." *Id.* at 586. The *Valero* court recognized that it was for the court to determine whether a later agreement between the parties revoked an arbitration clause because "[w]ithout an agreement to arbitrate, arbitration cannot be compelled." *Id.* (quoting *Freis*, 877 S.W.2d at 284). After considering the subsequent settlement agreement between the parties, the court held that it modified only certain enumerated provisions in the parties' original contract and that the arbitration clause was not one of them. *Valero*, 2 S.W.3d at 589.

*Valero* is analogous to our case. Before compelling arbitration, the trial court must determine whether a subsequent agree-

---

**2.** The fifth circuit has approved a district court's holding that whether a contract had been abandoned was for the trial court's determination. *General Guaranty Ins. Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924, 930 n. 9 (5th Cir.1970). In that case, the parties entered into a second agreement which, unlike the first agreement, did not contain an arbitration clause. *Id.* at 926.

The court noted that it did not read *Prima Paint* as "depriving the District Court of jurisdiction to decide the abandonment issue." *Id.* Like *General Guaranty*, the facts in our case involve a subsequent agreement between the parties. However, our facts are stronger in that the termination agreement specifically releases the parties of all prior obligations.

ment between the parties released them from their previous agreement to arbitrate.

Aside from the release language itself, another provision in the termination agreement evidences the parties' intent to no longer be bound by arbitration. The agreement provides, "[A]ny action arising out of, or relating to, this letter may, at the election of Viastar and TransCore, be brought and prosecuted only in the courts of, or located in, the State of Texas." Only if TransCore is released of its obligation to arbitrate could it have the option to file a lawsuit against Rayner in Texas.

We conclude it was proper for the trial court to determine whether the termination agreement released Rayner of his obligation to arbitrate. Only in considering Rayner's defense could the trial court make its obligatory determination of whether an enforceable arbitration agreement existed between the parties. We overrule TransCore's first issue.

### Denial of Motion to Compel Arbitration

 We now turn to whether the trial court abused its discretion in denying TransCore's motion to compel arbitration. In making its decision, the trial court had to consider two documents: (1) the SPA between Rayner, TransCore, and several other parties; and (2) the termination agreement between Rayner and Trans-Core. The SPA contained a broad arbitration clause requiring the parties to submit any dispute over the SPA to arbitration. Subsequently, Rayner and TransCore returned to the bargaining table and began negotiations to terminate their business relationship. Their negotiations led to a new agreement, the termination agreement. That agreement, in very broad language, unconditionally released the parties from all previous obligations.

Moreover, the termination agreement provides that it will be construed in accordance with the laws of Texas and any action related to it shall be brought only in a court located in Texas. Such provision conflicts with an obligation to arbitrate.

Under the above circumstances, we conclude the trial court's denial of the motion to compel arbitration was not so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See Johnson,* 700 S.W.2d at 917. We overrule Trans-Core's second issue.

We deny TransCore's petition for writ of mandamus.