**Affirmed and Memorandum Opinion filed December 18, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-01099-CV

---

## CHOPRA AND ASSOCIATES, PA, Appellant

## V.

## U.S. IMAGING, INC., Appellee

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 12-DCV-200191**

---

## M E M O R A N D U M   O P I N I O N

Appellant Chopra and Associates, PA, sent appellee U.S. Imaging, Inc., ("USI") a demand for arbitration after not receiving certain bonus payments allegedly owed under an agreement between the parties. USI subsequently filed suit seeking a declaratory judgment that the agreement under which appellant

sought arbitration was "never formed and was never in existence." Appellant moved to compel arbitration, and the trial court denied appellant's motion. In its sole issue, appellant contends that the trial court erred in denying its motion to compel arbitration. Appellant argues that USI is bound by the written agreement under the doctrine of ratification and that the testimony of Todd Richey, USI's CEO and President, is legally insufficient to establish that the parties operated under a different oral agreement. We conclude that the trial court did not err in denying the motion to compel arbitration because appellant has not conclusively established the existence of a contract containing a valid arbitration agreement. We therefore affirm the trial court's judgment.

## BACKGROUND

Appellant is a professional association of radiologists. The association provides radiological procedures and interpretation services. USI owns and operates numerous medical imaging centers. In July 2008, appellant began providing services for USI. Later that month, USI sent a written contract proposal to Dr. Lucky Chopra, managing member of appellant. Notably, the written proposal contained an arbitration provision and a provision under which appellant could earn bonuses if it met certain performance volumes.

Dr. Chopra testified that after receiving the proposal, he made alterations that he discussed with Todd Richey over the phone. He did not alter the arbitration provision. The modified document ("2008 Document") was sent via courier to USI. The cover letter stated, "As per your instructions, enclosed please find two signed originals of the *Physicians Agreement* you provided. I made the changes we discussed."

The parties stipulated that the signature on the courier sheet belonged to Lance Richey, Todd Richey's brother, and that if Lance had received an envelope

2

or package addressed to Todd, Lance would have given it to USI's receptionist to deliver to him. No copy of the 2008 Document with USI's signature was produced. Todd contended that he did not recall seeing the 2008 Document. He asserted that, notwithstanding the existence of the 2008 Document, the parties actually operated under an oral agreement that paid appellant a flat fee.

Because they are relevant to our disposition of the case, we detail the pertinent terms of the two alleged agreements. We begin by examining their similarities. Both provided that appellant would begin furnishing services at USI's Steeplechase and East Side Centers almost immediately. Although appellant had provided some services for USI in July, the formal agreements both began on August 4, 2008. The agreements called for bi-monthly payments of $30,000 for the initial three months, $32,500 for the next three months, and $35,000 every month thereafter. The working hours under each agreement were Monday thru Friday from 8 a.m. to 5 p.m. USI was to provide transcription services for appellant's radiologists reading scans from USI centers. Appellant was free to enter into agreements with imaging centers not owned by USI.

The purported agreements differed in several ways, however. According to Todd, the oral agreement did not contain bonus and arbitration provisions. Additionally, the 2008 Document contains a clause stating: "No changes in or additions to this agreement shall be recognized unless and until made in writing and signed by all parties." Todd testified that, contrary to this provision, the parties made three subsequent oral modifications to their oral agreement. First, appellant began providing additional radiology coverage whenever one of USI's radiologists was on vacation and another USI staff member could not cover the shift. Second, in November 2008, appellant began administering epidural steroid injections ("ESIs"), which was inconsistent with one of the terms Dr. Chopra had

3

altered in the 2008 Document.[1]  USI's transactions record shows that on January 30, 2009, appellant received a payment of $21,600 for the ESIs conducted during November and December of the previous year.  Third, in early December 2009, appellant began providing services at USI's Pearland Center.  Todd testified that the parties agreed appellant would receive an additional $3,000 per month as compensation for the new center.  USI's transactions record shows that on December 30, USI paid appellant $38,000, an increase of $3,000 from the previous monthly payments.  The record further demonstrates that until October 2011, USI paid appellant an additional $3,000 per month.

Dr. Chopra contended that the $3,000 increase in monthly payments was for ancillary services and that those services were provided within the scope of the 2008 Document.  Moreover, during the course of the business relationship between the two parties, Todd had received several emails from Dr. Chopra inquiring about the bonus compensation, yet Todd never sent a reply denying the existence of such a provision.  Additionally, an email from Todd to one of appellant's radiologists was introduced into evidence.  The email had been printed, and a calculation of bonus payments was handwritten on the email.  According to Dr. Chopra, the handwriting belonged to Todd.  For his part, Todd conceded that the handwriting looked "about as bad as mine" and allowed for the possibility that it belonged to him.

The trial court found in favor of USI and signed an order denying appellant's motion to compel arbitration.  This appeal followed.

---

[1] The proposal sent by USI included a clause stating, "Notwithstanding the generality of the foregoing, the Physician shall be responsible for ensuring that the Physician and/or another physician shall be on premises of the center at any time that contrast media or any invasive procedure is being performed on a patient."  The record shows that ESIs are an invasive procedure.  In the 2008 Document, this clause was struck out by Dr. Chopra, indicating appellant would not be providing such services.

ANALYSIS

In its sole issue, appellant contends that the trial court erred in denying its motion to compel arbitration. Appellant asserts that USI is bound by the arbitration provision contained in the 2008 Document under the doctrine of ratification and that Todd's testimony is legally insufficient evidence to establish the existence of a different oral agreement because no rational factfinder could credit it.

## I.     Standard of review and applicable law

Arbitration cannot be ordered in the absence of an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994). The party seeking arbitration has the initial burden to present evidence that a valid arbitration agreement exists. *In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, orig. proceeding). If there is an agreement to arbitrate, the party must also establish that the claims asserted fall within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005).

When we are called upon to decide whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, no pet.). Instead, we apply standard contract principles to determine whether a valid arbitration agreement exists. *Id.*

In this case, although the trial court orally recited findings and conclusions at the end of the hearing on the motion to compel arbitration, it did not sign written findings or conclusions. Because the court's oral statements cannot substitute for written findings and conclusions, we may uphold the court's order on any theory supported by the evidence, and we imply all factual findings supported by the record that are necessary to the order. *In re W.E.R.*, 669 S.W.2d 716, 716–17 (Tex.

5

1984) (per curiam); *Rush v. Barrios*, 56 S.W.3d 88, 96 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

When reviewing a denial of a motion to compel arbitration, if the court's implied factual findings are in dispute, we review the court's denial of the motion to compel under a legal sufficiency or "no evidence" standard. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 233 (Tex. 2003). Because the party seeking arbitration has the burden to establish an agreement to arbitrate, that party must show that there is no evidence to support the factfinder's finding of no arbitration agreement and that the evidence conclusively establishes the opposite. *Indian Oil Co., LLC v. Bishop Petroleum, Inc.*, 406 S.W.3d 644, 652 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)). The factfinder is the sole judge of the credibility of witnesses and the weight to be afforded their testimony, and it is free to resolve any inconsistencies. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex. 2000). We therefore defer to the trial court's factual determinations that are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009).

The absence of a signature on a contract does not necessarily negate its validity. *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 292 (Tex. App.—Corpus Christi 2003, pet. denied). When there is no signature, other evidence can establish the parties' intent to be bound. *In re Bunzl*, 155 S.W.3d at 209–10.

Ratification occurs if a party recognizes the validity of a contract by acting or performing under the contract or by otherwise affirmatively acknowledging it. *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App.—Austin 1999, pet. denied); *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 81 (Tex.

6

App.—Houston [1st Dist.] 1988, no writ). An intent to ratify may be inferred from acceptance of benefits under the agreement. *See Oram v. Gen. Am. Oil Co. of Tex.*, 513 S.W.2d 533, 534 (Tex. 1974). A party cannot avoid an agreement by claiming there was no intent to ratify after that party has accepted the benefits of the agreement. *See id.* (holding acceptance of payments under a lease had the effect of waiving any right of rescission or attack upon its invalidity).

## II. The trial court did not err in denying appellant's motion to compel arbitration.

We begin our application of these principles by addressing appellant's arguments regarding the scope of the evidence we should consider. Appellant asserts that USI performed under the 2008 Document and accepted the benefits of appellant's performance for several years. Appellant argues that USI is thus bound by the arbitration clause contained in the 2008 Document under the doctrine of ratification, and that the parties' subsequent modifications as well as the purported existence of a different, oral contract are irrelevant.

We disagree with appellant that the parties' subsequent course of conduct is inconsequential. Appellant had the burden of proving the existence of an agreement to arbitrate. *In re Koch*, 49 S.W.3d. at 444. Because the parties' conduct during the first few months of the business relationship—including USI's acceptance of benefits—was consistent with both the 2008 Document and the alleged oral contract, their conduct after those initial months—including any variations from the 2008 Document—is relevant in determining the parties' actual agreement.

We also disagree with appellant's assertion that it need not disprove the existence of an oral contract in order for the doctrine of ratification to apply here. As the party seeking to compel arbitration, appellant bears the burden to establish

7

the existence of an agreement to arbitrate, and we cannot overturn the trial court's implied finding of no agreement unless appellant shows that conclusive evidence establishes the existence of an agreement. *Indian Oil*, 406 S.W.3d at 652. Because we defer to the trial court's credibility determinations and findings of disputed facts, if there is evidence from which the trial court could have impliedly determined either that the written document containing an arbitration clause was not ratified or that the parties operated under an oral contract that did not contain an arbitration clause, appellant has failed to carry its burden.

Appellant further contends that Todd's testimony constitutes legally insufficient evidence of an oral agreement because no rational factfinder could credit it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) ("[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not."). But the question for this Court in conducting a legal sufficiency review is not whether, standing alone, a rational factfinder could credit Todd's testimony. A rational factfinder would also consider whether Todd's testimony is consistent with other evidence presented. In this case, Todd's description of the parties' oral agreement was consistent with several aspects of the parties' course of conduct. Therefore, a rational factfinder could have credited his testimony, and we consider it in reviewing appellant's legal sufficiency challenge.

Our inquiry thus defined, we turn to the evidence before the trial court regarding the two alleged agreements. As evidence that USI was bound by the 2008 Document, the record shows that the payments to appellant initially matched the terms of the 2008 Document, and the same services were provided at the same centers during the same hours. As additional evidence of ratification, appellant points to Todd's failure to deny the existence of the bonus provision when asked

8

about it via email, appellant's provision of services at additional centers without seeking an increase in base compensation, and the calculation of the bonus provision purportedly done by Todd.

On the other hand, the parties' early performance was also consistent with the alleged oral agreement, which initially had similar service and payment terms (as described in the background section above). Moreover, the parties' conduct later deviated from the terms set forth in the 2008 Document containing Dr. Chopra's changes, which was not signed by USI. The 2008 Document contains a provision stating that no changes shall be recognized unless made in writing, yet several oral modifications were made to the parties' agreement.[2] The payment terms were altered when an additional center was added, and additional services were provided by appellant, including vacation and ESI coverage. Additionally, no bonus payments were ever made.[3] These facts constitute some evidence that the parties did not intend to be bound by the 2008 Document. *See In re Bunzl*, 155 S.W.3d at 211 (concluding that a blank signature block and a contractual term providing that no modification or amendment is valid unless it is signed and in writing are evidence that the parties did not intend to be bound).[4] Given this

---

[2] We recognize that courts have allowed parties to modify an agreement orally despite a no-oral-modification clause. But the parties' oral modifications in this case provide some evidence that the parties did not consider themselves to be bound by a written contract with a no-oral-modification clause, especially given Dr. Chopra's testimony that the written contract was flexible enough to accommodate new centers without modification.

[3] While we consider USI's failure to make bonus payments as evidence that it did not intend to be bound by the 2008 Document, we express no opinion on whether the parties' agreement nonetheless included a bonus provision or whether USI is otherwise obligated to make such payments.

[4] Appellant contends that *Bunzl* is distinguishable because it addressed acceptance of an unsigned contract, not ratification. But *Bunzl* relied on authorities addressing acceptance by performance, which is a doctrine similar to ratification on the facts before us. Thus, we find the *Bunzl* court's analysis instructive.

9

conflicting evidence, the trial court could reasonably have found that appellant did not establish the existence of an agreement to arbitrate. *See id.* at 212.

To be sure, appellant had different explanations for Todd's conduct. Appellant alleged that Todd did not deny the existence of the bonus provisions, and that Todd's handwritten bonus calculations provide further evidence of the provisions' existence. Appellant also asserts that it would not have provided additional services at the new centers if it did not expect to be compensated under the bonus provision contained in the 2008 Document. Todd's failure to deny the existence of a bonus provision is not conclusive, however, as he also did not confirm its existence. Furthermore, there is no evidence that the handwritten calculations were shared with appellant, and appellant's provision of services at additional centers is also consistent with the increase in payments made by USI under the alleged oral contract. As the finder of fact, the trial court was entitled to evaluate the credibility of the witnesses and resolve these conflicts in the evidence. Because the trial court's resolution is supported by legally sufficient evidence, we must defer to its determination.

Whether a party has ratified a contract may be determined as a matter of law only if the evidence is not controverted or is incontrovertible. *Old Republic Ins. Co. v. Fuller*, 919 S.W.2d 726, 728 (Tex. App.—Texarkana 1996, writ denied). In this case, the evidence is controverted as explained above. Accordingly, the trial court did not err in denying appellant's motion to compel arbitration. We overrule appellant's sole issue.

**CONCLUSION**

Having overruled appellant's sole issue, we affirm the trial court's judgment.

/s/    J. Brett Busby
           Justice

Panel consists of Justices Boyce, Busby, and Wise.