**CLIFTON D. MAYHEW, INC.,**
**Plaintiff,**

v.

**MABRO CONSTRUCTION, INC.,**
**Defendant.**

**Civ. A. No. 74–399.**

United States District Court,
District of Columbia.

Sept. 13, 1974.

Mark P. Friedlander, Friedlander, Friedlander & Brooks, Arlington, Va., for plaintiff.

A. Fred Freedman, Lichtenberg & Luria, Washington, D. C., for defendant.

## OPINION

SIRICA, District Judge.

This case comes before the Court on the motion of the defendant Mabro Construction, Inc., to stay proceedings pending arbitration and to compel arbitration.

Suit was filed by plaintiff Mayhew, Inc., a subcontractor, against Mabro Construction, Inc., a general contractor, for monies due for labor and materials furnished. The parties had signed a contract in November, 1972, whereby the plaintiff agreed to paint and cover the walls of the Foxhall Apartments which the defendant was building. The contract contained a clause providing that:

"Any dispute arising under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of the American Institute of Architects. . . . The Subcontractor agrees that he will not take any legal action or institute proceedings of any kind for the enforcement of what he may deem to be his rights in connection with the subject matter of any dispute between himself and the Contractor until the Contractor either shall have refused to submit the same to arbitration, or . . . shall have rejected

or refused to comply with the decision of the Arbitrators. . . ."

A dispute arose between the parties concerning payments and concerning the schedule of performance. A meeting was held about November 27, 1973, by the parties at which time they discussed cancelling or suspending or terminating the contract, and an agreement (now disputed) was made. Thereafter, plaintiff did no more work for defendant. Defendant bought from plaintiff his remaining inventory of paint and wall covering, but did not pay for the work plaintiff had done. Instead, on February 14, 1974, Mabro filed a demand for arbitration, claiming that Mayhew owed the defendant $138,478.10, the cost of completing the painting and wall covering.

On March 8, 1974, Mayhew filed this suit for monies due for labor and materials, claiming $39,894.67 is owed by defendant for the reasonable worth of work and materials furnished. On March 28, 1974, the defendant filed the instant motion to stay proceedings pending arbitration (9 U.S.C. § 3) and to compel plaintiff to submit to arbitration (9 U.S.C. § 4).

Title 9 of the U.S. Code, Section Three, provides that "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration" a federal court shall stay court proceedings until after arbitration has been had.

■ Section Four provides that if . one party to an arbitration agreement fails to arbitrate, a federal court shall, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," order the refusing party to proceed with arbitration. But if either of these points is in issue, a hearing must be held on that issue by the Court, and the party alleged to be in default can demand jury trial.

In this case the plaintiff raises as a defense to the motion the claim that the contract which contained the arbitration clause was canceled by mutual agreement of the parties at the November 27, 1973 meeting.

The issue, then, is whether a dispute arising out of a contract containing an arbitration clause is referable to arbitration if it is claimed that the parties mutually canceled the contract; or does the claim of mutual cancellation put "the making of the agreement for arbitration . . . in issue," necessitating a trial on that point?

■ In favor of referring the entire dispute to arbitration is the general principle that questions of arbitrability are initially for arbitrators.

"[A]ny doubts as to the construction of the [Arbitration] Act ought to be resolved in line with its liberal policy of promoting arbitration both to accord with the original intention of the parties and to help ease the current congestion of court calendars." Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2d Cir. 1959) cert. dismissed 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

In Petition of Ropner Shipping Co., Ltd., 118 F.Supp. 919 (S.D.N.Y.1954) a petition to compel arbitration was resisted on the grounds that there had been an accord and satisfaction. In rejecting the objection, the Court noted: "But the issue of mutual cancellation of the agreement is one to be determined by the arbitrators and not the Court." Id. at 920.

In World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 (2d Cir. 1965) a party objected to a motion to compel arbitration on the ground that the other party had waived his right to seek arbitration. Arguing that "waiver 'unmakes' the arbitration agreement" that party claimed that the issue was for the courts, not arbitrators, to decide. The Second Circuit rejected that argument holding that such questions are for arbitrators to determine.

Numerous federal cases have held that even though a contract is terminated or expires, that does not erase the continu-

ing effectiveness of the arbitration agreement, and have entered Orders compelling arbitration even though the contract in which the arbitration clause was written expired before the demand for arbitration was filed. See, e. g., Zenol, Inc. v. Carblox, Inc., 334 F.Supp. 866 (W.D.Pa.1971) affirmed 474 F.2d 1338 (3rd Cir. 1973); Batson Yarn and Fabrics Machinery Group, Inc. v. Saurer–Allma GmbH–Allgauer Maschinenbau, 311 F.Supp. 68 (D.S.C.1970).

In 1967 the Supreme Court, in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) spoke to a related issue. In that case, one party was resisting a motion to stay proceedings pending arbitration (9 U.S.C. § 3) on the ground that the disputed contract (a "consulting agreement") had been fraudulently induced. The Supreme Court began by noting that:

> "This case presents the question whether the federal court or an arbitrator is to resolve a claim of 'fraud in the inducement,' under a contract governed by the United States Arbitration Act of 1925 . . . ." Id. at 396, 87 S.Ct. at 1802.

The Court observed that there was a split among the Circuits over whether questions about the validity of the whole contract should always be referred to arbitrators. Reviewing the various positions, the Court adopted the view of the Second Circuit that disputes concerning the validity of the whole contract must be separated from disputes relating specifically to the arbitration agreement, and only the latter should be considered by the courts before being referred to arbitrators.

> "We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider *only* issues relating to the making and performance of the agreement to arbitrate. In so concluding, we not only honor the plain

meaning of the statute but also the unmistakably clear congressional purpose that arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." Id. at 404, 87 S.Ct. at 1806. (emphasis added).

Since this decision, a few circuit courts have given Prima Paint a narrow reading.* In General Guaranty Insurance Co. v. New Orleans General Agency, Inc., 427 F.2d 924 (5th Cir. 1970) one party resisted arbitration on the ground that the contract had been "abandoned" by the parties several months earlier. The District Court denied a motion to stay proceedings until arbitration and held a two-day hearing (trial) on the issue of whether the contract was abandoned or merely terminated with a reservation of rights (including the right to arbitration.) The Court of Appeals, reviewing the District Court, noted in a footnote that: "We do not read Prima Paint Corp. . . . as depriving the District Court of jurisdiction to decide the abandonment issue." Id. at 930 n. 9.

The Seventh Circuit in Halcon International, Inc. v. Monsanto Australia, Ltd., 446 F.2d 156 (7th Cir. 1971), and the First Circuit in County of Middlesex v. Gevyn Construction Corp., 450 F.2d 53 (1st Cir. 1971), in cases in which arbitration was resisted on the grounds of laches and recission of contract, respectively, noted in dicta that the only kind of "unmaking" which Section Four of the Arbitration Act directs a federal court, instead of an arbitrator, to decide is "unmaking resulting from the mutual cancellation of the contract by the parties or the voiding of the transaction due to fraud, mistake or duress." 446 F.2d at 159; 450 F.2d at 56.

On the other hand, the Second Circuit has continued to support the federal policy favoring arbitration and has more liberally interpreted Prima Paint. See, e. g., Hamilton Life Insurance Co. of New

---

* It appears that Prima Paint has not yet been applied by the Court of Appeals for this Circuit.

York v. Republic National Life Insurance Co., 408 F.2d 606 (2d Cir. 1969); Trafalgar Shipping Co. v. International Milling Co., 401 F.2d 568 (2d Cir. 1968); see also Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968).

It seems beyond dispute that the parties are entitled to agree, should they so desire, that one of the questions referable to arbitration is the question of whether the contract has been terminated, abandoned, or canceled. See Robert Lawrence Co. v. Devonshire Fabrics Inc., *supra*, 271 F.2d at 410.

The parties here apparently did so agree when they approved the broad arbitration agreement involved. As set forth above, that agreement bound the plaintiff to

> "not take *any* legal action or institute proceedings *of any kind* for the enforcement of what he may deem to be his rights in connection with the subject matter of any dispute between himself and the Contractor . . ." (emphasis added)

until he tried arbitration. See R. Coulson, Prima Paint: An Arbitration Milestone, 23 BUS.LAWYER 241, 246 (1967): "When a businessman uses a broad arbitration clause, he indicates that he wants ALL issues to be arbitrated."

It is also true that parties can agree to terminate or cancel an arbitration agreement; and if such were alleged to have occurred in this case, there would still have to be a trial on that issue and a determination that the arbitration agreement were still in effect before this Court could issue a stay of proceedings or an order to arbitrate.

However, the procedure is not the same when a party alleges that the entire contract was canceled. The holding of the Supreme Court in *Prima Paint* indicates that such issues are for arbitrators and not for federal courts to decide.

The defendant's motion to stay proceedings and to compel arbitration will be granted.

Counsel for the defendant will prepare an appropriate Order.