**AMBULANCE BILLINGS SYSTEMS, INCORPORATED, Appellant,**

v.

**GEMINI AMBULANCE SERVICES, INC., Appellee.**

**In re Ambulance Billings Systems, Incorporated.**

**Nos. 04–02–00761–CV, 04–02–00863–CV.**

Court of Appeals of Texas, San Antonio.

Jan. 22, 2003.

Glenn J. Deadman, Deadman & Ferguson, An Association of Professional Corporations, San Antonio, for appellant.

Sam D. Millsap, Jr., Law Offices of Sam D. Millsap, Jr., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: CATHERINE STONE, Justice.

In these consolidated proceedings, Ambulance Billings Systems, Incorporated ("ABS") complains of the trial court's order granting the motion to stay arbitration filed by Gemini Ambulance Services, Inc. ("Gemini"). The arbitration clause at issue is governed by the Texas Arbitration Act; therefore, we dismiss ABS's petition for writ of mandamus for lack of jurisdiction. Because the trial court erred in granting the motion to stay arbitration, we reverse the trial court's order.

### BACKGROUND

ABS and Gemini entered into a Billing Agreement in January of 2001 pursuant to which ABS agreed to provide billing services to Gemini. The Billing Agreement contained the following provisions relating to the settlement of disputes between the parties:

> If a dispute arises out of this contract and such dispute cannot be settled through direct negotiations between the parties, the parties agree to endeavor to

resolve the dispute through mediation. If the parties cannot agree upon the selection of a mediator[,] the Association of Attorney–Mediators, Inc. ("AAM") shall be asked to provide a list of three AAM members in good standing. Within ten days of receipt of such list, each party shall have the right to strike one name from the list and the name remaining on the list (or first available name if both parties strike the same name) shall be the mediator. The mediator [sic] shall take place within 30 days from the date such mediator is selected. In the event that such dispute cannot be resolved by mediation, the parties agree to submit the matter to arbitration, in accordance with the Commercial Arbitration Rules of the American Arbitration Association. If the parties cannot agree upon the selection of an arbitrator, a member of the AAM shall be selected using the same process as used in selecting the mediator.

A dispute arose between the parties with regard to whether Gemini was providing ABS with one hundred percent of its billing as required by the Billing Agreement. In April of 2002, Gemini delivered a notice of its termination of the Billing Agreement. The parties attempted to negotiate their dispute and also attempted to mediate. On September 10, 2002, ABS submitted its demand for arbitration to the American Arbitration Association ("AAA").

On September 18, 2002, Gemini filed a petition for declaratory judgment and request to stay arbitration in the underlying cause. Gemini contended that a settlement agreement had been entered into between the parties which did not contain an arbitration clause; therefore, the arbitration clause in the Billing Agreement was no longer in effect. Gemini further contended that ABS's demand for arbitration included parties that are not subject to the arbitration clause and that the Billing Agreement does not require arbitration by the AAA.

ABS responded and disputed that it had entered into a settlement agreement. ABS asserted that the issue of whether the parties had entered into a settlement agreement was an issue subject to arbitration. ABS noted that the other parties named in the demand for arbitration did not file a motion requesting a stay. ABS also asserted that the other parties were subject to arbitration under an alter-ego theory. Finally, ABS responded that by agreeing to arbitrate pursuant to the Commercial Arbitration Rules of the AAA, AAA is authorized to administer the arbitration.

After a non-evidentiary hearing, the trial court granted Gemini's motion to stay. ABS complains of the trial court's order in an accelerated appeal and a petition for writ of mandamus, which we have consolidated.

## FEDERAL ARBITRATION ACT OR TEXAS ARBITRATION ACT?

 A trial court's order denying arbitration under the Texas Arbitration Act is subject to interlocutory appeal; however, mandamus relief must be sought to challenge the denial of arbitration under the Federal Arbitration Act ("FAA"). *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 497 (Tex.App.-San Antonio 2000, orig. proceeding). The FAA "extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach." *In re L & L Kempwood Associates, L.P.*, 9 S.W.3d 125, 127 (Tex.1999). The party seeking to compel arbitration must establish its right to arbitrate under the FAA. *In re Education Mgmt. Corp.*, 14 S.W.3d 418, 422 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding). In this case, both Gemini's

motion to stay arbitration and ABS's response cite provisions from the Texas Arbitration Act. Gemini argues that the FAA is not applicable because the transaction between the parties does not affect interstate commerce. ABS states that it filed the petition for writ of mandamus "in an abundance of caution." Because the applicability of the FAA affects our jurisdiction to consider one of these proceedings, we must determine if the FAA applies.

■ In deciding whether to compel arbitration, the trial court is entitled to rely on affidavits, pleadings, discovery, and stipulations. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex.1992). ABS references a provision in the Billing Agreement that required ABS to mail reimbursement payments from payor sources, including Medicare, Medicaid, and private insurance, directly to Gemini. Based on this provision, ABS notes that some of the payments for services by Gemini potentially emanate outside Texas.

In *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 324, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991), the United States Supreme Court was presented with an issue regarding whether interstate commerce was involved in the provision of ophthalmological services. The Court held that interstate commerce was involved because services were performed for out-of-state patients and generated revenue from out-of-state sources, including Medicare. *Id.* at 327, 329–30, 111 S.Ct. 1842. Similarly, in *In re Tenet Healthcare, Ltd.*, 84 S.W.3d 760, 765 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding), the Houston court of appeals held that an employment arrangement between a distribution clerk and a hospital related to interstate commerce because the hospital treated patients who lived out-of-state, received goods and services from out-of-state, received payments from out-of-state insurance carriers, and received

federal funds such as Medicare and Medicaid.

In this case, no evidence was presented that Gemini provided services to out-of-state patients or that Gemini received goods and services from out-of-state. Furthermore, although the agreement required ABS to forward out-of-state payments directly to Gemini, no evidence was introduced to show that ABS ever received an out-of-state payment to forward to Gemini. Accordingly, ABS failed to establish its right to arbitrate under the FAA, and the petition for writ of mandamus is dismissed for lack of jurisdiction.

### DISPUTED SETTLEMENT

ABS contends that the arbitrator must decide whether the parties settled the dispute arising out of the Billing Agreement. Gemini responds that ABS failed to controvert Gemini's evidence regarding the existence of a written settlement agreement. Gemini further responds that if the parties did not enter into the written settlement agreement, the trial court did not err in granting the motion to stay arbitration based on the parties' verbal settlement agreement.

With regard to whether evidence was presented disputing the existence of a settlement, whether written or verbal, the attachments to Gemini's motion to stay arbitration include a series of correspondence and draft settlement agreements. None of the agreements are signed by ABS. The correspondence includes a letter dated July 3, 2002, from ABS's attorney regarding settlement terms, and a responding letter dated July 10, 2002, from Gemini's attorney asserting that a settlement was previously reached. Because the trial court is entitled to rely on affidavits, pleadings, discovery, and stipulations in resolving a motion to compel, the attachments to Gemini's motion and ABS's re-

sponse adequately raised the issue of whether the parties reached a settlement agreement. *See Jack B. Anglin Co. v. Tipps,* 842 S.W.2d at 269.

■■■ A party seeking to compel arbitration must: (1) establish the existence of a valid, enforceable arbitration agreement; and (2) show that the claims asserted fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999); *In re Koch Indus., Inc.,* 49 S.W.3d 439, 444 (Tex.App.-San Antonio 2001, orig. proceeding [leave denied] ). The party seeking arbitration has the initial burden to present evidence of an arbitration agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d at 573; *In re Koch Indus., Inc.,* 49 S.W.3d at 444. The burden then shifts to the opposing party to present evidence that the agreement was procured in an unconscionable manner, induced or procured by fraud or duress, or that the other party has waived its right to compel arbitration under the agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d at 573; *In re Koch Indus., Inc.,* 49 S.W.3d at 444.

■■■ We review a trial court's determination regarding the existence of an arbitration agreement under an abuse of discretion standard. *In re Koch Indus., Inc.,* 49 S.W.3d at 444. Our resolution of this appeal turns on whether the trial court correctly determined that the issue regarding the existence of a settlement agreement was an issue the trial court was permitted to resolve. This is a legal issue that we review de novo. *Henry v. Gonzalez,* 18 S.W.3d 684, 690 (Tex.App.-San Antonio 2000, pet. dism'd by agr.).

■■■ In *Henry v. Gonzalez,* this court held that an arbitration agreement contained within a contract is separable from the entire contract and survives the termination or repudiation of the contract as a

whole. 18 S.W.3d at 690. In *In re Koch Indus., Inc.,* we relied on *Henry* to hold that the issue of whether an easement containing an arbitration provision had been abandoned by the parties is an arbitrable issue. 49 S.W.3d at 445. We held that because the abandonment issue related to the validity of the easement or contract as a whole, not the abandonment of the arbitration clause, the issue was for the arbitrator to decide. *Id.* In reaching our holding, we distinguished the Fifth Circuit's opinion in *General Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.,* 427 F.2d 924 (5th Cir.1970). *In re Koch Indus., Inc.,* 49 S.W.3d at 444–45.

In *General Guar. Ins. Co.,* one of the parties asserted that the contract containing the arbitration provision was abandoned by mutual consent and superseded by another contract with different terms and provisions which did not contain an arbitration clause. 427 F.2d at 926. The district court denied the request to stay proceedings pending arbitration in an order that provided in part:

> The question is then presented—should the parties be directed to arbitrate? We think not. There is a possibility that the contract has been abandoned. If this were the case, it would be because of some subsequent agreement over which it is agreed the arbitrator has no jurisdiction. That issue must be determined by the Court, and to avoid a useless arbitration, should be, we believe, determined now.... IT IS FURTHER ORDERED that a separate trial of the issue of whether the contract was abandoned or merely terminated with reservation of rights be held....

*Id.* at 927. The Fifth Circuit agreed, stating, "The propriety and desirability of having an initial judicial determination of whether an arbitration contract exists is well recognized," and "[i]f the first agree-

ment was superseded by the second, arbitration would drop out of the picture." *Id.* at 928–29. We distinguished *General Guar. Ins. Co.* in *In re Koch Indus., Inc.*, stating that unlike that case, the parties in *Koch Industries* "did not enter into a subsequent easement that did not contain an arbitration provision." *Id.*

Although under the reasoning in *General Guar. Ins. Co,* it would appear that the issue of whether the parties entered into a settlement agreement abandoning the arbitration provision would be an issue for the trial court, more recent federal cases hold to the contrary. In *Clifton D. Mayhew, Inc. v. Mabro Constr., Inc.,* the parties entered into a services agreement containing an arbitration provision. 383 F.Supp. 192, 192 (D.D.C.1974). Under the terms of the agreement, Mayhew, Inc., a subcontractor, agreed to paint and cover the walls of the apartments that Mabro Construction, Inc., a general contractor, was building. *Id.* After a dispute arose between the parties, the parties met and discussed cancelling or terminating the contract, and a new agreement was made. *Id.* at 193. After that agreement was reached, Mayhew did not perform any more work for Mabro. *Id.* Mabro bought Mayhew's remaining inventory of paint and wall covering, but Mabro did not pay Mayhew for the work previously performed. *Id.* Mabro subsequently filed a demand for arbitration, claiming Mayhew owed Mabro for the cost of completing the work. *Id.* Mayhew filed a lawsuit seeking payment for work it performed. *Id.* Mabro filed a motion to stay the lawsuit pending arbitration. *Id.* As a defense to the motion, Mayhew claimed that the original agreement containing the arbitration provision was canceled by mutual agreement. *Id.*

The district court asserted that the issue presented was "whether a dispute arising out of a contract containing an arbitration clause is referable to arbitration if it is claimed that the parties mutually cancelled the contract; or does the claim of mutual cancellation 'put the making of the agreement for arbitration … in issue,' necessitating a trial on that point?" *Id.* The district court cited several early cases that held that the issue of mutual cancellation of the agreement is one to be determined by the arbitrators. *Id.* at 193–94. The district court then noted the United States Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), in which the Court held that disputes concerning the validity of the whole contract must be separated from disputes relating specifically to the arbitration agreement, and only the latter should be considered by the courts before being referred to arbitrators. *Clifton D. Mayhew, Inc.,* 383 F.Supp. at 194. The district court further noted that since the decision in *Prima Paint Corp.,* a few circuit courts had given the decision a narrow reading, citing the Fifth Circuit's decision in *General Guar. Ins. Co.* as an example. *Id.* The district court then asserted, "It seems beyond dispute that the parties are entitled to agree, should they so desire, that one of the questions referable to arbitration is the question of whether the contract has been terminated, abandoned, or canceled." *Id.* at 195. Given the broad language in the arbitration provision, the district court held that the parties in that case agreed to arbitrate that question. *Id.* The district court concluded its reasoning as follows:

> It is also true that parties can agree to terminate or cancel an arbitration agreement; and if such were alleged to have occurred in this case, there would still have to be a trial on that issue and a determination that the arbitration agreement [was] still in effect before this

Court could issue a stay of proceedings or an order to arbitrate.

However, the procedure is not the same when a party alleged the entire contract was canceled. The holding of the Supreme Court in Prima Paint indicates that such issues are for arbitrators and not federal courts to decide.

*Id.*

Similarly, in *Prime Vision Health Inc. v. Indiana Eye Clinic, PC,* No. IP00–0096–C–B/S, 2000 WL 977397, at \*1 (S.D.Ind. July 13, 2000), the parties entered into an Administrative Services Agreement containing an arbitration clause. After the parties submitted the issue of an alleged breach of the agreement to arbitration, they reached a purported settlement of the dispute; however, a dispute arose over the purported settlement. *Id.* One of the parties claimed that the disagreement was arbitrable because it arose out of an alleged breach of the Administrative Services Agreement, and the terms of the settlement specifically related to that agreement. *Id.* The other party contended that the settlement agreement terminated the Administrative Services Agreement and its arbitration clause, so that any dispute related to the settlement agreement was not subject to arbitration. *Id.*

 The district court noted that arbitrability is a matter to be decided by the court, not an arbitrator; however, courts focus narrowly on that issue. *Id.,* at \*3. "When asked to compel or stay arbitration, therefore, the threshold question is whether the parties agreed to arbitrate the particular dispute before the court." *Id.* "This question is a matter of contract interpretation, directing the court to determine whether the parties, at the time they formed the contract containing the arbitration clause, intended the arbitration clause to cover disputes such as the one faced by the court." *Id.* When inter-

preting the scope of an arbitration clause, a court must be mindful of the strong policy favoring arbitration and the general rule that a court should not deny a motion to compel unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the dispute at issue. *Id.; see also Pennzoil Co.,* 30 S.W.3d at 499. The district court then reasoned:

In order to enter into a settlement agreement, there must be an underlying dispute to settle. In this case, the dispute allegedly resolved by the Settlement Agreement was the alleged breach of the ASA. Furthermore, the terms of the Settlement Agreement specifically relate to the ASA. Since the dispute over the Settlement Agreement arose out of an alleged breach of the ASA, and the Settlement Agreement was crafted to directly relate to the ASA, we find, as a matter of law, that this dispute had its origin in the ASA and a claimed breach thereof, and is, therefore, well within the scope of the ASA's arbitration clause.

*Prime Vision Health, Inc.,* 2000 WL 977397, at \*4.

The arbitration provision in the Billing Agreement between ABS and Gemini provided for arbitration of any dispute arising out of the agreement. We agree with the reasoning in *Prime Vision Health, Inc.* that a dispute over the settlement of the Billing Agreement between ABS and Gemini has its origin in the Billing Agreement. Because the parties agreed to arbitrate any dispute arising out of the Billing Agreement and the dispute over the settlement has its origin in the Billing Agreement, the dispute over the settlement is within the scope of the arbitration clause. Alternatively, we hold that a dispute regarding whether a settlement agreement was reached replacing or canceling the Billing Agreement is an issue that con-

cerns the validity of the whole contract, making it an arbitrable issue. *In re Koch Indus., Inc.*, 49 S.W.3d at 445. Although *General Guar. Ins. Co.* appears to stand for a contrary proposition, we are not bound by the Fifth Circuit's decision. *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993).

### ARBITRATION BY AAA

The parties agreed to arbitrate in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Rule R–2 of those rules provides that when parties agree to arbitrate under the Commercial Arbitration Rules, they thereby authorize AAA to administer the arbitration. *See* American Arbitration Association, Commercial Dispute Resolution Procedures (Including Mediation and Arbitration Rules) R–2 (effective July 1, 2002), *available at* www.adr.org. Accordingly, when the parties agreed to arbitrate in accordance with the Commercial Arbitration Rules, they authorized the AAA to administer the arbitration.

### ADDITIONAL PARTIES

Gemini contends that the trial court could grant the motion to stay arbitration because the demand for arbitration included two parties that were not parties to the agreement. We question whether Gemini has standing to request a stay of arbitration on this ground. Assuming that standing exists, ABS could properly include the other two named parties in its demand for arbitration under theories of veil piercing/alter ego, which were the theories asserted in ABS's demand. *In re Keystone Shipping Co.*, 782 F.Supp. 28, 29 (S.D.N.Y. 1992).

### CONCLUSION

The trial court's order granting Gemini's motion to stay arbitration is reversed, and the cause is remanded to the trial court with instructions to enter an order denying Gemini's motion and staying the proceedings in the underlying lawsuit pending the outcome of the arbitration.