NUMBER 13-02-00527-CV
 
COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS
 
CORPUS CHRISTI - EDINBURG


 

JAMES TERRAL LETTE AND ALICIA M.
LETTE, D/B/A LETTE INSURANCE AGENCY,                          Appellants,

v.

BROOKE CORPORATION, FIRST BROOKE 
INSURANCE AND FINANCIAL SERVICES,
INC., AUSTIN AGENCY, INC. AND 
BOB AUSTIN, INDIVIDUALLY,                                                   Appellees.



On Appeal from the 357th District Court
of Cameron County, Texas.



MEMORANDUM OPINION

Before Justices Rodriguez, Castillo, and Wittig




Opinion by Justice Castillo

         This is an appeal from a judgment confirming an arbitration award. Appellants
are James T. Lette and Alicia M. Lette, individually and d/b/a Lette Insurance Agency
(collectively, the "Lettes"). Appellees are Brooke Corporation ("Brooke"), First Brooke
Insurance and Financial Services Inc. ("First Brooke"), Austin Agency, Inc. and Bob
Austin, individually (collectively, "Austin"). By four issues, the Lettes challenge the
trial court's: (1) referral of the entire dispute to arbitration; (2) confirmation of the
arbitration award without convening an oral hearing; (3) failure to vacate the
arbitrator's award as outside the scope of the parties' agreement to arbitrate; and
(4) confirmation of the arbitrator's award over non-party Lette Property Partnership
(the "Partnership"). We affirm. 
I. PROCEDURAL HISTORY OF APPEAL
         The Lettes appealed on September 20, 2002. The record was filed and the
briefing complete by March 3, 2003. We submitted the case on April 2, 2003. On
April 28, 2003, the Lettes filed a notice of bankruptcy. We abated the case on May 1,
2003. It remained abated until we reinstated the case October 14, 2003 on the
appellees' motion to reinstate the appeal. See Tex. R. App. P. 8. The appeal
continued. 
II. BACKGROUND FACTS
         The relationship between the parties started in 2000 when the Lettes entered
into an agreement with Brooke, a Kansas corporation, for the purchase of most of the
assets of the Lettes' insurance business. Pursuant to an "Agreement for Purchase of
Agency Assets" (the "Purchase Agreement"), the purchase price was $1.2 million. 
The Purchase Agreement contained a five-year covenant not to compete that restricted
the Lettes from selling most types of property and casualty insurance within a fifty-mile radius of each location sold to Brooke. The agreement also gave Brooke a license
to use the trade name "Lette Insurance Agency" within the same geographic areas. 
A related transaction provided that Brooke and Austin would lease the Lettes' former
office space from the Lettes' affiliated entity, the Partnership, and continue to operate
the insurance business in the same location (the "Lease Agreement"). Also in a related
transaction, the Lettes subleased a portion of the same office space from Brooke so
they could continue to run a life and health insurance business from the location (the
"Sublease Agreement"). 
         On the dates of these transactions, Brooke was not licensed to do business or
sell insurance in Texas. To satisfy Texas insurance regulations, the parties agreed to
transfer certain assets directly from the Lettes to First Brooke, Brooke's Texas affiliate. 
Brooke assigned its rights under the Purchase Agreement and the office lease to First
Brooke. First Brooke then entered into a franchise agreement with Austin, an existing
insurance agency in Brownsville, Texas. Brooke retained the rights to assign any and
all of the Purchase Agreement to one of its franchise agents. It did so when Austin
became a Brooke franchise agent contemporaneously with the purchase of the Lettes'
insurance business. The parties crafted and specifically included an arbitration
agreement in the Purchase Agreement, which was added as a new paragraph 24 in an
written addendum. 
         Austin took possession of the leased premises and assigned to Brooke the right
to renew the property and casualty policies previously sold by the Lettes. The parties'
relationship deteriorated. The Lettes filed suit on July 6, 2002 in the form of a
declaratory judgment action, seeking a declaration regarding the construction of certain
provisions of the Purchase Agreement under the Texas Insurance Code. The Lettes
also asked for damages and injunctive relief. They sought to have Brooke, First
Brooke, and Austin enjoined from using the Lettes' agency trade name, its insurance
license, and its contractual agency appointments with carriers to renew policies or
write new ones in violation of state law. The Partnership was not named as a plaintiff
in the lawsuit. 
         In their petition, the Lettes contended that the defendants were misusing the
Lettes' agency trade name for the illegal purpose of writing business with companies
with which neither First Brooke nor Austin had agency appointments. Brooke and
Austin counterclaimed, alleging that the Lettes were in breach of the parties'
agreements and were defaming and disparaging Brooke and Austin by claiming the
Lettes still owned the assets. Brooke and Austin also claimed that the Lettes were
interfering with the contracts that Brooke and Austin purchased by telling the
insurance markets and customers that the Lettes had not sold the business. 
         Brooke, First Brooke, and Austin filed a motion to compel arbitration pursuant
to the arbitration agreement in the Purchase Agreement. After a failed attempt to
resolve the case in mediation


 on August 29, 2001, the Brooke defendants filed a
motion for a temporary restraining order on September 11, 2001. The parties agreed
to the entry of a temporary injunction. In addition to the parties to the lawsuit as
described above, the Partnership was named in the agreed temporary injunction as a
party subject to its injunctions.


 The agreed temporary injunction stated that it was
"binding upon Brooke, Austin, Lette, LLH, [the Partnership], its officers, agents,
servants, employees and attorneys." 
         The trial court set a hearing on the motion to compel arbitration for
September 20, 2001. The Lettes filed a sworn response to the motion to compel,
objecting to arbitration. The trial court overruled the Lettes' objections and ordered
that "the above entitled and numbered cause is compelled to arbitration before the
American Arbitration Association." 
         On June 3, 2002, the arbitrator issued a written award. The arbitrator denied
all of the Lettes' claims and awarded Brooke and Austin damages on their
counterclaims as follows: (1) from the Lettes, jointly and severally, to Brooke and
Austin, jointly, $200,000; (2) from the Lettes and the Partnership, jointly and
severally, to Brooke and Austin, jointly, $80,355.00; (3) from the Lettes and the
Partnership, jointly and severally, to Brooke and Austin, $75,000.00 in attorney fees. 
The arbitration award also granted injunctive relief against the Lettes and the
Partnership. 
         On June 10, 2002, Brooke filed a motion with the district court requesting that
the district court confirm the award of the arbitrator. On June 21, 2002, without
holding a hearing or issuing notice to the Lettes or the Partnership before doing so, the
trial court signed an order confirming the arbitrator's award. 
         On June 26, 2002, Lette responded to the defendants' motion to confirm the
arbitrator's award. They also sought to vacate the court's confirmation of the award
and resulting final judgment. The trial court denied the Lettes' motion to vacate. This
appeal ensued. 
III. ARBITRABILITY
A. Standards of Review and Burdens of Proof
         Texas law long has followed a public policy, originally developed in federal
jurisprudence, that strongly encourages and favors arbitration. EZ Pawn Corp. v.
Mancias, 934 S.W.2d 87, 90 (Tex. 1996) (orig. proceeding) (per curiam) (citing L. H.
Lacy Co. v. City of Lubbock, 559 S.W.2d 348, 351(Tex. 1977)). We review a trial
court's determination concerning the existence of an arbitration agreement under an
abuse-of-discretion standard. In re C & H News Co., 133 S.W.3d 642, 645 (Tex.
App.–Corpus Christi 2003, orig. proceeding); Southwest Tex. Pathology Assocs.,
L.L.P. v. Roosth, 27 S.W.3d 204, 207 (Tex. App.–San Antonio 2000, pet. dism'd
w.o.j.); ANCO Ins. Servs. of Houston, Inc. v. Romero, 27 S.W.3d 1, 3 (Tex. App.–San
Antonio 2000, pet. denied). The abuse-of-discretion standard contains both legal and
factual components. Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig.
proceeding). Under this standard, the Lettes must establish either: (1) the trial court
reasonably could have reached only one decision concerning the existence of an
arbitration agreement; or (2) the trial court failed to analyze or apply the law correctly
to the facts. Id.; Roosth, 27 S.W.3d at 207. To the extent our review addresses
the trial court's legal interpretation of the arbitration clause at issue - a question of law
- we perform a de novo review. D. Wilson Constr. Co. v. Cris Equip. Co.,
988 S.W.2d 388, 393 (Tex. App.–Corpus Christi 1999, orig. proceeding) (op. on
reh'g); Leander Cut Stone Co., Inc. v. Brazos Masonry, Inc., 987 S.W.2d 638, 640
(Tex. App.–Waco 1999, no pet.). Whether an agreement imposes a duty on the
parties to arbitrate a particular dispute is a matter of contract interpretation and also
is a question of law. Tenet Healthcare Ltd. v. Cooper, 960 S.W.2d 386, 388 (Tex.
App.–Houston [14th Dist.] 1998, writ dism'd w.o.j.). 
         Under federal law, a district court's finding regarding the existence of an
agreement to arbitrate is reviewed like "any other district court decision finding an
agreement between parties, i.e., accepting findings of fact that are not 'clearly
erroneous' but deciding questions of law de novo." Hardin Constr. Group, Inc. v.
Strictly Painting, Inc., 945 S.W.2d 308, 312 (Tex. App.–San Antonio 1997,
orig. proceeding [mand. denied]) (quoting First Options of Chicago, Inc. v. Kaplan,
514 U.S. 938, 947-48 (1995)). In the context of appellate review of arbitration
orders, the factual component of the abuse-of-discretion standard applied by Texas
courts is similar to the clearly erroneous standard applied by federal courts. Strictly
Painting, 945 S.W.2d at 312. 
         The party seeking arbitration bears the initial burden of establishing that a claim
falls within the scope of a valid arbitration agreement. EZ Pawn Corp.,
934 S.W.2d at 91. Once the proponent of arbitration establishes that a claim falls
within the arbitration agreement, the burden shifts to the party opposing arbitration to
establish some ground for revocation of the arbitration agreement. In re Oakwood
Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding) (per
curiam). 
         The Lettes' first issue contends that the trial court erred in compelling the
parties to arbitrate because: (1) there was no written agreement to arbitrate between
all of the parties; (2) some of the issues of law were not appropriate for arbitration;
and (3) the scope of the agreement to arbitrate was limited only to the narrow issues
of construction and interpretation of the Purchase Agreement. In their third issue, the
Lettes contend that the trial court committed reversible error by failing to vacate and
set aside the award of the arbitrator. They argue that the arbitrator's award exceeded
the scope of the agreement to arbitrate between the parties. We turn to the arbitration
clauses at issue. 

B. The Arbitration Clauses
         The Lettes and Brooke agreed to an addendum to the Purchase Agreement:
24. Arbitration. In the event that any controversy arises between the
parties in the interpretation, performance or construction of this
Agreement, then in that event, the parties hereto agree that they will
submit their controversy to arbitration in a manner agreed to by the
parties. In the event that the parties cannot agree on the manner method
or place of arbitration, then in that event said controversy will be
submitted to the American Arbitration Association to be resolved in
accordance with the rules and regulations of that association. 

         Further, the Lease Agreement between Brooke and the Partnership provided for
arbitration following mediation:
23.Landlord and Tenant agree that, following mediation, all unresolved
issues shall be resolved by binding arbitration. Absent an agreement to
use other rules, the arbitration will be controlled by the American
Arbitration Association's Commercial Arbitration Rules. 

         The Sublease Agreement between the Lettes and Brooke contained an identical
arbitration clause:
21.Arbitration. Landlord and Tenant agree that, following mediation,
all unresolved issues shall be resolved by binding arbitration. Absent an
agreement to use other rules, the arbitration will be controlled by the
American Arbitration Association's Commercial Arbitration Rules. 

C. Applicable Law

1. Agreement to Arbitrate
         In determining whether these clauses compel arbitration, the trial court was
required to decide two issues: (1) whether a valid, enforceable arbitration agreement
exists; and (2) if so, whether the asserted claim falls within the scope of the
agreement. Dallas Cardiology Assocs., P.A. v. Mallick, 978 S.W.2d 209, 212 (Tex.
App.–Texarkana 1998, pet. denied); Nationwide of Bryan, Inc. v. Dyer, 969 S.W.2d
518, 520 (Tex. App.–Austin 1998, no pet.). The Lettes do not dispute that a valid
arbitration agreement existed between Brooke and them. They complain that First
Brooke, Austin Agency, Inc., and Austin, individually, were not parties to the
agreements. The Lettes argue the trial court could not compel them to arbitrate with
non-parties to the agreements. 
2. Non-Parties to the Agreements to Arbitrate
         Under certain circumstances, non-signatories or non-parties to an arbitration
agreement may be bound to arbitrate. ANCO Ins. Servs. of Houston, Inc. v. Romero,
27 S.W.3d 1, 6 (Tex. App.–San Antonio 2000, pet. denied). Under the doctrine of
equitable estoppel, a signatory can compel a non-signatory to arbitrate in two
circumstances. In re Merrill Lynch Co. F.S.B., 123 S.W.3d 549, 555 (Tex. App.–San
Antonio 2003, orig. proceeding). First, the doctrine can apply when the signatory to
an agreement containing an arbitration clause relies on the agreement in asserting its
claims against the non-signatory. Id. When the signatory's claims against a non-signatory presumes or makes reference to the existence of the agreement, the
signatory's claims relate directly to and arise out of the agreement, and arbitration is
appropriate. Id. Second, the doctrine of equitable estoppel applies when the signatory
to a contract containing an arbitration agreement raises allegations of concerted and
substantially interdependent misconduct by one or more signatories to the contract and
the non-signatory. In re Koch Indus., 49 S.W.3d 439, 447 (Tex. App.–San Antonio
2001, orig. proceeding). 
3. Scope of Arbitration Agreement
         Because arbitration is favored in the law, a presumption of arbitrability attaches
once the existence of an arbitration agreement is established. Cantella & Co. v.
Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding) (per curiam);
Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 898-99 (Tex. 1995) (orig.
proceeding) (per curiam); Mallick, 978 S.W.2d at 212. Further, a broad arbitration
clause that purports to cover all claims or disputes regarding the contract or its breach
also creates a presumption of arbitrability. AT&T Technologies, Inc. v.
Communications Workers, 475 U.S. 643, 650 (1986). 
         The presumptions favoring arbitration require that questions about the scope of
arbitrable issues be resolved in favor of arbitration "whether the problem at hand is the
construction of the contract language itself or an allegation of waiver, delay, or a like
defense to arbitrability." Collins v. Int'l Dairy Queen, Inc., 2 F. Supp. 2d 1473, 1477
(M.D. Ga. 1998) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
460 U.S. 1, 24-25 (1983)). The strong policy favoring arbitration reflected in these
presumptions applies to questions of arbitrability under the Texas General Arbitration
Act


 as well as under the Federal Arbitration Act.


 See Ambulance Billings Sys., Inc.,
v. Gemini Ambulance Servs., Inc., 103 S.W.3d 507, 514 (Tex. App.–San Antonio
2003, no pet.) (consolidated interlocutory appeal and orig. proceeding) (applying
presumption of arbitrability in interpreting broad arbitration clause under the TAA). 
Accordingly, "[an] order to arbitrate the particular grievance should not be denied
unless it may be said with positive assurance that the arbitration clause is not
susceptible of an interpretation that covers the asserted dispute." Steeleworkers v.
Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960); Ambulance Billings
Sys., Inc., 103 S.W.3d at 514. Given the law's presumption in favor of arbitration,
where a contract provides for arbitration of some issues, it may be presumed that the
parties likely gave some thought to the scope of the arbitration clause. First Options,
514 U.S. at 945. In such cases, "[in] the absence of any express provision excluding
a particular grievance from arbitration, we think only the most forceful evidence of a
purpose to exclude the claim from arbitration can prevail." AT&T Technologies,
475 U.S. at 650 (quoting Warrior & Gulf Navigation, 363 U.S. at 584-85). 
         Thus, presumptions in favor of arbitration affect a court's application of ordinary
state law principles governing the formation of contracts when determining whether
the parties agreed to arbitrate a certain matter. First Options, 514 U.S. at 944. The
opponent of arbitration of a merits-based controversy must produce convincing
evidence that the parties intended to exclude the controversy from the scope of the
arbitration clause. Int'l Dairy Queen, 2 F. Supp. 2d at 1477 (citing AT&T
Technologies, 475 U.S. at 650; First Options, 514 U.S. at 945); see Prudential Sec.
Inc., 909 S.W.2d at 900 ("The burden was on [the parties opposing arbitration] to
show that their claims fell outside the scope of the arbitration agreement."). 
D. Analysis 
1. Existence of an Agreement to Arbitrate
         We find that Brooke met its initial burden of proving that the Lettes agreed to
arbitrate. The arbitration clauses are broad. None provides any exclusions from
arbitration. The Purchase Agreement provides for arbitration "in the event that any
controversy arises between the parties in the interpretation, performance, or
construction of this agreement. . . ." [Emphasis added.] The construction of this
contract language is subject to a presumption favoring arbitration, which is created
both by public policy and the agreement's "any controversy" language. AT&T
Technologies, 475 U.S. at 650. Further, the Lease Agreement and Sublease
Agreement provide for arbitration of "all unresolved issues" following any mediation
between the parties. 
2. Scope of Agreement to Arbitrate Extends to Non-Signatories
         The Lettes relied on the Purchase Agreement in asserting their claims against
Austin and First Brooke, the non-signatories. See In re Merrill Lynch Co. F.S.B.,
123 S.W.3d at 555; see also ANCO Ins. Servs. of Houston, Inc., 27 S.W.3d at 6. 
Further, the Lettes' claims against Austin and First Brooke relate directly to and arise
out of the Purchase Agreement. In their lawsuit, the Lettes alleged, "the conduct of
Defendant Brooke and its agents constitute a breach of the Agency Purchase
Agreement with Plaintiffs . . . ." [Emphasis added.] Thus, the doctrine of equitable
estoppel applies because the Lettes raise allegations of concerted and substantially
interdependent misconduct by Brooke, Austin, and First Brooke. See In re Koch
Indus., 49 S.W.3d at 447. We hold that Austin and First Brooke, although non-signatories to the Purchase Agreement, may be compelled to arbitrate through
application of the doctrine of equitable estoppel. See In re Merrill Lynch Co. F.S.B.,
123 S.W.3d at 555; see also In re Koch Indus., 49 S.W.3d at 447. 
3. Scope of Agreement to Arbitrate Extends to "Any Controversy"
         Construction of the language in the contract is subject to the presumptions in
favor of arbitration created both by the broad "any controversy" language in the
arbitration clause of the Purchase Agreement and public policy. AT&T Technologies,
475 U.S. at 650. The Lettes specifically assert that interpretation of Texas Insurance
law was outside the scope of the parties' arbitration agreement. The Lettes were
required to produce convincing evidence that the parties intended to exclude
interpretation of Texas insurance law from the scope of the arbitration clause. See
Int'l Dairy Queen, 2 F. Supp. 2d at 1477 (citing AT&T Technologies, 475 U.S. at 650;
First Options, 514 U.S. at 945); see also Prudential Sec. Inc., 909 S.W.2d at 900. 
Only forceful evidence of some purpose to exclude an issue from arbitration can
prevail. Warrior & Gulf Navigation, 363 U.S. at 582-83; Ambulance Billings Sys., Inc.,
103 S.W.3d at 514. The Lettes did not present any such evidence. We cannot say
"with positive assurance that the arbitration clause is not susceptible of an
interpretation that covers the asserted dispute." Warrior & Gulf Navigation, 363 U.S.
at 582-83; Ambulance Billings Sys., Inc., 103 S.W.3d at 514. We find that the Lettes
did not meet their burden to present convincing evidence that the parties to the
arbitration agreement intended to exclude the issue of Texas insurance law from
arbitration. Id. 
         Accordingly, we hold that the trial court did not abuse its discretion in ordering
the parties to arbitration. Nor, for the same reason, did the trial court abuse its
discretion in denying the Lettes' motion to vacate the award. We overrule the Lettes'
first and third issues. 
IV. CONFIRMATION OF ARBITRATION AWARD WITHOUT A HEARING
         The Lettes' second issue contends that the trial court committed reversible error
in entering an order confirming the award in arbitration without holding a hearing. 
They argue that section 171.093 of the Texas Civil Practice and Remedies Code
requires a hearing. See Tex. Civ. Prac. & Rem. Code Ann. § 171.093 (Vernon 1997). 
Section 171.093 states as follows: "The court shall hear each initial and subsequent
application under this Subchapter in the manner and with the notice required by law
or court rule for making and hearing a motion filed in a pending civil action in a district
court." Id. The phrase "shall hear," as used in section171.093, does not require an
oral hearing or personal appearance before the Court:
[N]ot every hearing called for under every rule of civil procedure
necessarily requires an oral hearing. Unless required by the express
language or the context of the particular rule, the term "hearing" does
not necessarily contemplate either a personal appearance before the court
or an oral presentation to the court. 
Martin v. Martin, Martin & Richards, Inc., 989 S.W.2d 357, 359 (Tex. 1998). The
"Defendants'/Counter-Plaintiffs' Motion to Confirm Arbitrator's Award and Enter Final
Judgment," dated June 10, 2002, provided the Lettes with notice of appellees' intent
to seek confirmation of the award. The trial court confirmed the arbitrator's award
without a hearing and signed the final judgment on June 21, 2002. However, on
August 16, 2002, the trial court convened an oral hearing on the Lettes' motion
to vacate the arbitrator's award. We find that the trial court heard and considered
the Lettes' arguments. Accordingly, any error in not holding the hearing initially
is harmless. See Tex. R. App. P. 44.1(a); see also Aguirre v. Phillips Props.,
111 S.W.3d 328, 332 (Tex. App.—Corpus Christi 2003, pet. denied). We overrule
the Lettes' second issue. See id. 
V. JURISDICTION OVER THE PARTNERSHIP
         In their fourth issue, the Lettes contend that the trial court committed reversible
error in confirming the arbitrator's award in its entirety. They argue that the
Partnership is not a party to this litigation. Thus, the Lettes conclude, the trial court
had no jurisdiction to order a judgment against the Partnership. 
         A trial court must have jurisdiction over all the parties and the subject matter of
the action to adjudicate the rights of the parties. Dawson-Austin v. Austin,
968 S.W.2d 319, 328 (Tex. 1998). The district court had jurisdiction over the Lettes
as well as jurisdiction over First Brooke, Brooke, Austin, and Bob Austin, individually,
all parties to the arbitration that resulted in the award confirmed by the trial court. The
Partnership was not named as a party in this lawsuit and did not file any formal
appearance. It did, however, participate in the arbitration ordered by the trial court. 
We also note that the Partnership is named as one of the parties enjoined by an Agreed
Temporary Injunction signed by the trial court in this case. A party may subject
itself to the jurisdiction of the court by appearing and seeking judgment or
adjudication by the court on some question. See Investors Diversified Servs., Inc. v.
Bruner, 366 S.W.2d 810, 815 (Tex. Civ. App.–Houston 1963, writ ref'd n.r.e.). 
"A general appearance is entered whenever a party invokes the judgment of the
court on any question other than that of the court's jurisdiction." Letersky v. Letersky,
820 S.W.2d 12, 13 (Tex. App.–Eastland 1991, no writ). We conclude that the
Partnership subjected itself to the jurisdiction of the court. See id. We overrule the
Lettes' fourth issue. 
VI. CONCLUSION
         We affirm the judgment of the trial court confirming the arbitration award. 
 
                                                                        ERRLINDA CASTILLO
                                                                        Justice

Memorandum Opinion delivered and filed
this 12th day of August, 2004.